# CHARLESTON.

THE COUNTY COURT OF MINGO COUNTY *v.* CHATTAROY COAL COMPANY *et al.*

(No. 6042)

Submitted March 6, 1928.    Decided March 13, 1928.

1. EMINENT DOMAIN—*Courts Will Rarely Set Aside for Excessiveness or Insufficiency Verdicts in Condemnation Proceedings Founded on Reasonable View of Conflicting Evidence Strengthened by Jury's View; Verdicts of $1,400 and $2,760 for Widening Highway Through Coal Company's Land Held Not Inadequate.*

In condemnation proceedings courts will rarely set aside verdicts on the ground that the award of compensation for the land taken and damages assessed for injury to the residue is insufficient or is too great, where there is a sharp conflict in the evidence as to the amount of compensation, and damage, if any, and the verdict is founded on any reasonable view of the conflicting evidence strengthened by the jury's view of the property as affected by the public improvement. (p. 324.)

(Eminent Domain, 20 C. J. § 568.)

2.   Same—*Last Assessed Value of Condemned Land May be Used as Evidence of Value Where Assessment is Limited to Particular Property Involved (Code, c. 29, § 115).*

Under chap. 29, sec. 115, Code, the last assessed value of the land taken by condemnation may be used as evidence of its value where the assessment is limited to the particular property involved in the proceeding.   (p. 327.)

(Eminent Domain, 20 C. J. § 388.)

3.   Evidence—*Price Voluntarily Paid by Condemnor for Land Situated Similarly to That in Question is Admissible in Condemnation Proceeding; in Condemnation Proceeding Price Paid by Condemnor for Land Similarly Situated to Compromise Suit, or if it Included Values Other Than Land Itself, is Not Admissible.*

In a condemnation suit evidence of price paid by the condemnor for land similarly situated is admissible if voluntarily paid.   But if paid in order to compromise a suit begun or in good faith about to be instituted, or the price paid included values other than the land itself, the evidence of the amount paid is not admissible. ·  (p. 328.)

(Evidence, 22 C. J. § 855.)

4.   Trial—*In Condemnation Proceeding on Conflicting Evidence as to Necessity for Retaining Walls, Instruction to Disregard Evidence Relating Thereto if all Necessary Retaining Walls Have Been, or Will be, Erected by Condemnor, Held Error; in Condemnation Proceeding, Instruction to Disregard all Evidence Relating to Retaining Walls if all Necessary Walls Had Been, or Would be, Erected by Condemnor, Held Erroneous Under Evidence.*

Where the evidence in a condemnation suit is in sharp conflict over the necessity for the erection of a retaining wall to protect a portion of the residue of the land condemned, it is error to instruct the jury to disregard all evidence relating to retaining walls if they believe all necessary walls have been erected or will be erected in the future by the condemnor.   Under the evidence in this case such instruction is misleading, and may have taken from the jury consideration of a proper element of damage.   (p. 329.)

(Trial, 38 Cyc. p. 1651 [Anno].)

5.   Same—*In Condemnation Proceeding, Interrogatories to Jury, Not Raising Material Issues, May be Refused.*

Interrogatories to the jury which do not raise material issues, and which if answered would not be controlling upon

the verdict the jury may return, may be refused in the discretion of the trial court.   (p. 331.)

(Trial, 38 Cyc. p. 1911.)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mingo County.

Two suits by the County Court of Mingo County against the Chattaroy Coal Company and others to condemn land to widen a highway, consolidated for trial.   Judgments awarding less than it asked, and the named defendant brings error.

*Judgments reversed; verdicts set aside;*
*new trial awarded.*

*Wade H. Bronson* and *J. B. Straton,* and *Strother, Sale, Curd & Tucker,* for plaintiff in error.

*G. W. Crawford* and *Lafe Chafin,* for defendant in error.

LIVELY, JUDGE:

These two condemnation suits were consolidated and tried before a jury which rendered separate verdicts for the damage done to the land owner for the land taken, and damages to the residue respecting two tracts of land designated as tract No. 1 and tract No. 2.   It appears that the county road through defendant's two tracts, being a thirty foot right of way with a travelled way of eighteen feet wide, was taken over by the State Road Commission as a state road and it become necessary to widen it to the width of a state road and also widen the travelled way five feet on each side making a travelled way of twenty-eight feet in width.   Under the statute the road commission proceeded, by its contractor, to widen the road and the county court later instituted these two suits to condemn the strips on each side of the old county road necessary for the state road and its proper construction. Commissioners were appointed and they reported compensation and damages to tract No. 1, out of which 1.68 acres was taken, at $3,050.00; and compensation and damages to tract No. 2, out of which 2.9 acres was taken, at $5,062.00.   Tract No. 1 was owned in fee by defendant coal company, and tract No. 2 was held by it under lease for mining coal.   Defendant.

coal company, not being satisfied with the damages assessed by the commissioners, demanded a jury which rendered a verdict of $1,400.00 for compensation and damage to tract No. 1, and $2,760.00 for tract No. 2. From the judgments entered the coal company prosecutes error, alleging: (1) that the verdicts are contrary to the law and evidence—the damages being grossly inadequate; (2) that the court erroneously permitted plaintiff to show the assessed value of the property; (3) that the court erred in not permitting it to show that plaintiff had paid a certain price for similar land; (4) that the court improperly instructed the jury at instance of plaintiff; and (5) that the court refused interrogatories to be answered by the jury, propounded and offered by defendant.

These assignments will be considered in the order stated. It appears that the coal company's land, owned and leased, was rough mountain land underlaid with coal in various seams, and extended down the mountain side to the right of way of the N. & W. Ry. Company which closely paralleled Tug river running through those mountains. The old county road was located along the hillside in the same general direction of the railroad, and through the lands of defendant on a higher elevation than the railroad. Defendant's tipple was over the old road and at least one support thereof was in the thirty ft. right of way. A spur track from the railroad ran under the tipple and for some distance paralleled the county road, but at a much lower elevation. Damages are claimed because of dirt, rocks and debris thrown over the bank onto this spur track. At another point on tract No. 2 a road led down from the old county road to a side track at which defendant unloaded from railroad cars supplies for its mine, and it is claimed that this road was destroyed as well as the unloading space near the side track, for which large damages are claimed. At another point on tract No. 1 a road led up from the old county road as a way of ingress and egress to several miners' houses located on the hillside above the road, and damages are claimed for alleged destruction to this way. It appears that many of the miners' houses on both tracts were located along the old road in close proximity, including the manager's house and the boarding house, and three houses were torn down and de-

stroyed; three small houses were moved to a new location between the road and the railroad, and nine small miners' houses located between the road and the railroad were set back to give room for the widening of the road, at the cost of plaintiff. The foreman's house and company boarding house were not damaged except by taking land in front of them, and bringing the road nearer to them. Damages are claimed because of a slide on the mountain side near the incline, which it is asserted may damage the incline and tipple and its appurtenances. Other damages are claimed for alleged impairment of a garage or so, two or three apple trees, service pipes and other lines. It is claimed by defendant that retaining walls will have to be built by it to properly protect its miners' houses from dirt and silt, one wall estimated at a cost of $10,000.00, and others to protect its supply and refuse tracks from slides and the like at a cost of $20,000.00. Some idea of the situation of defendant's property and the damages claimed may be gleaned from the above statement without further detail. The controversy is over the value of the land actually taken, and the damages to the residue of the property as above set out in the important details.

As is usual in cases of this character the opinion of the witnesses as to the value of the land and damage to the residue is widely different. Defendant's superintendent estimates the damages to both tracts including the value of the land taken is in the neighborhood of $100,000.00, while its other witnesses make lower estimates. The coal company contends that the lowest estimate which could be made from its testimony as to the value of the land and damages to the residue of tract No. 1 is $17,987.00; and that the value of the land taken and damages to the residue of tract No. 2 is $41,315.00, making in all $59,302.00; and that inasmuch as the jury has awarded the total damage at $4,160.00 it is reasonably conclusive that the verdict reflects passion, prejudice or some ulterior motive on the part of the jury. There is a sharp conflict in the evidence as to the value of the land as well as to the items of damage above claimed. To illustrate the wide divergence of opinion as to the value of the land taken, Wood, the superintendent, says that he would place the

value of both tracts at $12,000.00, while some of his witnesses value the 1.68 acres in tract No. 1 at $1,092.00, and the value of the 2.9 acres in tract No. 2 at $2,900.00, estimating the land at $1,000.00 per acre. Wood says that the 2.9 acres is worth $10,000.00. One witness for the county court placed the value of the land taken at not over $300.00, and there was much evidence to the effect that Wood had agreed to fix the value of the land taken at $2,000.00, if the county court would pay for certain damages claimed by him to the residue. There was also evidence from the assessor and from the land books and perhaps a report made by the coal company for the purposes of taxation that the land which included the two tracts was assessed at $30.00 per acre and its entire real estate holdings at $7,420.00, and it appeared that the entire real and personal property of defendant was assessed at $22,000.00. There was evidence also that Wood, the superintendent, appeared before the Board of Equalization and Review and requested a lowering of the assessment on the 58 acres which included tract No. 1, and known as the Hatfield tract, on the theory that all of the Winifrede coal seam had been mined out except five or six acres, and that the assessment was reduced on that particular tract. The jury was taken to the premises and observed the character and location of the land taken, lying in long strips adjoining the old road, together with the damages alleged to have been suffered by the residue in the destruction of houses, removal of houses, roads for ingress and egress and walls which had been constructed by the contractor at his expense for protecting defendant's property, and in the construction of the road we think the view by the jury is entitled to considerable weight in its ascertainment of the value of the property taken as well as to the damages to the residue. It may be well to state without going into tedious detail that the amount of damage to the houses, roads, tracks, outhouses, incline and the like, is in as much conflict in the opinion of the witnesses as the value of the land actually taken. As an instance; damages were claimed for destruction of the road leading down to the unloading space at the spur track of the N. & W. Railroad Company, whereas, the witnesses for the plaintiff say that the road is in as good,

if not in better, condition than before the improvement began. As another instance: $10,000.00 is asserted by some of the witnesses as the damage occasioned by the destruction or hampering of the unloading space near the spur track, whereas, Bradley and other witnesses for plaintiff say that the loading space is in as good condition as before the improvement began, and that a retaining wall was built by the contractor which kept the dump of the improvement off the loading space, said retaining wall having been built twenty feet from the right of way of the railway with the concurrence and to the satisfaction of the superintendent of the coal company. Anticipated damages are claimed because of the slide on the mountain side near defendant's incline and tipple, whereas, plaintiff's witnesses say that the slide or slip was there before the work began and that the excavation at the side of the road did not cause it, nor did it increase the hazard; and that it is the duty of the road commission to protect the road from all slides which may come in and remove them for the convenience of public travel. The witnesses who testify for defendant both as to the value of the land taken and the damages to the residue are more numerous, it is true, than those of plaintiff, but number of witnesses on one side is not always conclusive. On the whole we cannot say from the evidence that the verdicts of the jury were the result of passion, prejudice or some other ulterior motive; and we will not disturb the judgments on the grounds that the evidence does not sustain the verdict. We cannot say from this conflicting evidence that the damages assessed are grossly inadequate. *Road Commission* v. *McMurray,* 103 W. Va. 346; *Baltimore & Ohio Railroad Company* v. *Bonafield's Heirs,* 79 W. Va. 287, 296.

The next assignment of error is the introduction of the assessed value of the property as evidence to show its actual value. The statute, chap. 29, sec. 115, Code, provides that: "In any proceeding to take or damage for public use all or any part of any property, real or personal, or in any proceedings wherein the value of any such property or any part thereof may come in question, the assessment of such property appearing on the land or personal property books,

last certified before the beginning of such proceedings, shall be admissible, together with other evidence, to ascertain the value of such property." We think the statute itself answers this point of error. It may be true that such assessed value is not very weighty evidence of the actual value, for it is well known that although the theory of assessment is that all lands shall be assessed at their true and actual value, yet the practice has been to assess some lands, at least, far below the true and actual value. The evidence of the assessed value was admissible for whatever weight the jury saw fit to give it. The coal company cites *Railway Company* v. *Conley et als.*, 84 W. Va. 489, for the proposition that the assessed value in the instant case should have been rejected. In the *Conley* case the evidence of the assessed value was inadmissible because that assessment included not only the lot which was taken, but another adjoining piece of property, and it was pointed out by Judge POFFENBARGER that it was impossible to tell from this joint assessment what particular sum was assessed as the value of the lot taken. In the present case the land from which the parcels have been condemned were assessed by the acre and did not include any other tract.

The third point of error is the refusal to permit R. H. Tethco to testify that the county court had paid him $4,000.00 for damage to his lot and storehouse located in the same neighborhood, and surrounded by some of the property of defendant. The plaintiff says this evidence was improper because the sum paid to Tethco was in the nature of a compromise settlement for the right of way through his property and is not therefore admissible under *Railroad Company* v. *Coal Company*, 75 W. Va. 423. It appears from Tethco's evidence that some kind of papers had been served on him by the county court and he appeared before that body and after several days of negotiation they finally got together and agreed upon the price and he says that that settlement was in the nature of a compromise. The coal company points out that the county records disclosed that no suit had been instituted against Tethco for condemnation, and therefore it could not have been in the nature of a compromise. However this may be, it appears that the land taken included the de-

struction of a storehouse belonging to Tethco, and evidence offered did not show or offer to show the amount paid for the land exclusive of the storehouse. 10 R. C. L. page 221, section 188, says that the sum paid by a condemnor for similar land even if proceedings have not been begun, if the purchaser has the power to take by eminent domain if it cannot agree with the owner, is not admissible; for such payments are in the nature of a compromise, to avoid the expense and uncertainty of litigation, and are not fair indications of market value. This is in accord with *Railroad Company* v. *Coal Company, supra.* If the sale had been made by Tethco voluntarily and the land was similar in character to defendant's land, the evidence of the amount paid Tethco would have been admissible. But that is not the case here. In the section of 10 R. C. L. above cited, it is also stated that evidence of the price paid by a condemnor for other property to be used in the enterprise is generally regarded as inadmissible to prove the value of the land condemned, although there is a conflict in the authorities. Had Tethco sold his land for a nominal sum defendant would likely have objected to evidence of such sale on the ground that it was not similar property, and that whatever motive of generosity, necessity or estimated advantage might have moved Tethco to such action, it would be no evidence of the value of its property. We think the evidence as proffered was inadmissible and there was no error in its refusal.

The fourth point of error is based on the giving of plaintiff's instruction No. 3, which told the jury, in substance, that if they believed that all necessary retaining walls had been built, *or would be built,* by plaintiff then they should not consider the evidence in respect to such walls or in assessment of damages, provided they should further believe that such retaining walls had been built, or would be built upon the land taken by plaintiff, or upon lands of the railway company by its permission. This instruction is based on the evidence for defendant which was to the effect that the retaining walls, or at least one of them, had given away, and was not sufficient to insure against probably consequent damages, and that another wall would have to be built for the protection of eleven

houses below the road, at a cost of $10,000.00; and countered by evidence from plaintiff that the walls already built were adequate; that the one broken had been repaired adequately by well casing; that they had been built by the contractor at his expense to be reimbursed by the state and county, and that his contract required him to build all proper walls to hold up the road, and protect the adjacent property; that one wall was put in to protect the highway and defendant's mine tracks, and one wall for preservation of the unloading space intact; and that possibly there was one or two placed where a wall would be required. At the time of the trial the improvement had not been completed, the contractor was still at work, and stated that with favorable weather conditions he thought he could finish in four or five months. The evidence of plaintiff indicated that all proper retaining walls (one or two in addition to those already erected), would be built, except the retaining wall claimed to be necessary by defendant to protect nine or ten miners' houses just below the widened road, at a cost (estimated by defendant), of $10,000.00. As above indicated, there was a sharp controversy as to the necessity of this $10,000.00 wall to protect the miners' houses. The expression in the instruction to disregard all evidence about the walls if the jury believed that all necessary walls had been built or *would be built* may have misled the jury, with respect to the necessity of this particular wall and caused them to disregard the evidence pertaining to it. The jury may have understood the instruction to mean that if in the further progress of the work it was deemed necessary to build this expensive wall, then it would be built under the contractor's obligation to construct walls necessary for the road and adjoining property. It was error to instruct the jury as to what they might believe would be done in the future, under this evidence. There was no assurance that any other wall would be built; that happening depended upon the judgment of the road builders. Bradley, the engineer in charge, said that possibly one or two might be necessary. His judgment of the necessity would not be conclusive. Serious damages might accrue to defendant's property from his erroneous judgment. This error was no doubt induced because the work was

not completed. Because this instruction is misleading under the evidence, and removes consideration of a material element of damage claimed by defendant, based on what might be done in the future for protection of plaintiff's property depending on the judgment of those in charge of the road construction, the judgments will be reversed, and a new trial awarded.

The last alleged error is the refusal of defendant's instruction No. 8, which required the jury to answer what amount of damage they awarded for the land actually taken, the damage to the apple trees, to the garage, outhouses, drainage pipes, terra cotta pipes, damage, if any, to three houses removed and relocated; damage to other houses moved back from the old road; damages to ingress and egress to miners' houses on the hill; destruction of certain other houses, impairment of unloading space; damages for erection of wall or other necessities for protection of delivery tracks east and west of tipple; damages to light line to Dr. Lawson's office, to high tension line, certain pipe lines; and to the incline and tipple. By these interrogatories defendant sought to require the jury to specifically report the amount of damage, if any, it assessed for every item of damage claimed by defendant. It was based on the theory that there were nineteen issues involved. The submission of interrogatories is within the discretion of the trial court, and its discretion in giving or refusing, will not be disturbed unless plainly abused. *Kerr* v. *Lunsford,* 31 W. Va. 659; *Peninsular Land Company* v. *Franklin Insurance Company,* 35 W. Va. 666. Answers to these interrogatories would not have necessarily controlled the verdict. Some might have been answered in the negative —no amount of damages for a specific claim awarded. Besides, we find that defendant's instruction No. 5 told the jury that they should first find compensation for the land taken, then damages, if they believe any there was, to the residue, and in determining such damage they should consider the evidence respecting the various claims for damages for each of the items mentioned in the proposed instruction, and in assessing compensation for the land taken they should add thereto such amounts, if any, suffered by defendant as dam-

ages in any of the particulars mentioned in the instruction. The interrogatories were designed to require the jury to report. whether they found for or against defendant on any of these items, and if for defendant, then the sums to which made up their general finding on the issue involved. The only difference in the instruction given and the interrogatories refused is that the jury was required to report the component items entering into its verdict. The trial court did not abuse its discretion in refusing the interrogatories.

*Judgments reversed; verdicts set aside; new trial awarded.*