MAMIE DEWITT *v.* JOHN ELMORE

(No. 7264)

Submitted October 11, 1932.   Decided October 18, 1932.

*Grover F. Hedges,* for appellant.
*Thos. P. Ryan,* for appellee.

LIVELY, JUDGE:

This is an injunction suit over an alleged right of way, in which defendant was restrained from obstructing the right of way.   From the decree, he prosecutes this appeal.

Plaintiff claimed the way as one of necessity and by prescription, she and her predecessors in title to her land, having used it continuously and uninterruptedly for more than forty years.   Defendant says that the way is not one of necessity, and that plaintiff has no right to pass over the way by prescription or otherwise.   Thus, the issues were clearly drawn.

All of the land involved was originally owned by Taylor. Taylor's title included plaintiff's 77-acre tract, which lies on the head waters of Warelong Branch, and also included the land of defendant's fifty acres, which lies at the head of Barn Hollow, just across the ridge from the 77-acre tract, and,

perhaps, adjoining it. The ridge runs between the head waters of Warelong Branch and Barn Hollow, and plaintiff's 77 acres is on the Warelong Branch side, running up to the top of the ridge, and defendant's fifty acres is on Barn Hollow, and extends up the ridge, and, perhaps, adjoining the 77-acre tract. The alleged way in dispute runs from the 77-acre tract through a very small portion of defendant's 50-acre tract and thence down Barn Hollow on the right-hand hillside, going down to the public road on Garner's Branch, into which the small stream in Barn Hollow flows. It appears that plaintiff's grandfather, William H. Davis, purchased the 77-acre tract from Taylor prior to 1890. After he died, the deed for the land was made by the Taylors in 1897 to his daughter, Adelaide, who afterwards intermarried with Hineman. Plaintiff lived with her mother in her childhood, and was reared on the 77-acre tract; and she acquired the title from her mother in 1930. She says that prior to that time, her mother had executed and delivered to her a deed for the 77 acres, many years before the date of the recorded deed of April, 1930, but that the old deed was never put to record, but was destroyed and the new deed executed in 1930. She says that in her childhood there was a road leading from her home up over the ridge and down Barn Hollow and through the land now occupied by the defendant, and that she and others traveled that road in going to school and on business or pleasure over on the Garner's Branch, where there was and is a public road.

This way of travel was used by equestrains and pedestrains, and occasionally by sleds and wheeled vehicles. It was not a well-defined graded road. It was something like the mountain trails which were followed by the early inhabitants of this land. Many of the oldest inhabitants of that section testify that there was such a way from the earlier times, some of them saying forty or fifty years back, and that they traveled over it and knew of other persons using that way to get to the 77-acre tract and through it down Warelong Branch. Defendant, by contract with the Taylors, in 1895, obtained the title to the 50-acre tract and a formal deed was made to him

by the Taylors in April, 1903, and duly admitted to record. He admitted that persons had passed over this indefinite trail on his land both before and after he obtained title thereto, but he says that, after he obtained his title and took possession, they went through his place by permission only. Other witnesses say they passed through his land over this way without permission from him and there was no hindrance to their free passage. The way from his 50-acre tract down Barn Hollow to Garner's Branch was on lands then owned and now owned by the Taylors to where it joined the public road near the old Taylor residence on Garner's Branch. There is some conflict in the evidence as to the location of this traveled way from the 50-acre tract down to the public road at Garner's Branch. It appears that the vehicles, such as thrashing machines, and the like, followed a bench, as the witnesses call it, from the 50-acre tract around the right-hand side of Barn Hollow and thence down the hill to the gate at the public road; other witnesses say that there was another way which was lower down on the side of the hill from the bench and which was a shorter route down to the gate and which was traveled largely by pedestrians and persons on horseback.

In 1925, defendant began to grade a road from the gate at Garner's Branch up Barn Hollow to his 50-acre tract, and which, for a short distance from the gate, followed the traveled way used by all persons for ingress and egress through the Taylor land, and then practically adopted the horse and pedestrian way up to the 50-acre tract; that is, he did not construct his road around the bench or flat which theretofore had been used by the wheeled vehicles. Many of the witnesses of advanced age testified that the present graded road follows the old road through the Taylor lands and practically on the same location. In August of that year (1925), he obtained a written agreement from Nora Taylor and her children (some minors), permitting him, for a consideration of ten dollars, to construct this road on the location indicated through the Taylor land; and in that contract or agreement, the Taylors provided (for the consideration of allowing defendant to cut a few small trees along the route) that defendant should per-

mit plaintiff, at this time a tenant on the land of the Taylors, to haul her crops and pass over the land of said party of the second part (defendant), as long as she was a tenant on said land, and caused no damage to defendant. Plaintiff was not a party to this contract and did not know its contents. At that time, she was a tenant on 166 acres belonging to the Taylors, lying on both sides of Garner's Branch, and there was testimony that the road in question ran over a portion of that 166 acres at the place where it entered the county road. In 1928, she, plaintiff, purchased this 166 acres, thus severing her tenancy. About that time, defendant leased his 50-acre tract to the United Fuel Gas Company for exploration for gas, and in order to get its drilling and other material to the location for the gas well, the gas company, by permission from defendant, further improved the road, and it can now be used conveniently by vehicles up to the defendant's 50-acre tract. All this time, and for years prior to this time, plaintiff had been going from the place she rented up and down the Barn Hollow right of way to and from her land on the head of Warelong Branch, the 77-acre tract. But when she purchased the 166 acres and was no longer a tenant (and it is in evidence that defendant also was trying to purchase the 166 acres from the Taylors), and had passed over the road and through gates, which had been erected thereon by defendant, taking a cow for breeding purposes to the 77-acre tract, defendant notified her that she could no longer pass over his road and locked the gates so that she could no longer pass. This suit followed, in which she seeks to enjoin him from obstructing her passage over the road. It resulted, as above set out, in a decree enjoining defendant from obstructing the road over a small portion of his land, describing the road as beginning near the mouth of Barn Hollow at a gate along the graded public road near plaintiff's residence, and running up said Barn Hollow as the road is now located, through a small part of defendant's land near his residence, through four gates or draw-bars so as to intersect with plaintiff's 77-acre tract at a designated point; and from interfering with plaintiff's free use of the right of way except that the gates

or draw-bars should be closed but not locked, or put in condition to obstruct plaintiff's passage through them.

As above stated, defendant denied the prescriptive right of plaintiff to pass through the small portion of his 50-acre tract. Without detailing the evidence of the old inhabitants on that point, it is sufficient to say that the clear preponderance of evidence is that such a way was used by the first occupants of the 77-acre tract long before defendant purchased his 50-acre tract and that other persons passed through that land without molestation or hinderance. We think the evidence warrants a finding of a prescriptive right of the plaintiff to this passageway. It was the only way, traveled way, from the' 77 acres through the Taylor lands down to Garner's Branch at the time and long after the time that the 77 acres was contracted for by plaintiff's grandfather.

Defendant, in support of his contention that this way was not one of necessity, showed that the first occupants of the 77-acre tract could go down Warelong Branch through the land of others to the public road on Sandy Creek; and that there was another way which was sometimes traveled from the 77-acre tract up the hill through the Niday place to another public road, a mile or so distant; and that there could be a road constructed on the left-hand side of Barn Hollow through the Taylor land from the 77 acres to Garner's Branch, and which would be a nearer route. Plaintiff shows by many witnesses that this "left-hand route", through the Taylor land, is impracticable because of cliffs and the like, and that it would cost more than the worth of the 77 acres to construct a road there. There is also much evidence to the effect that the route through the Niday farm and the route down Warelong Branch were practically impassable. There is nothing in the evidence to show that the Niday route and the Warelong Branch way through other lands were more than permissive. They were not public ways.

It is quite well settled law that where a grantor deeds a portion of his land entirely surrounded by his own lands, a way of necessity is implied to the grantee over the grantor's lands. *Wooldridge* v. *Coughlin,* 46 W. Va. 345, 33 S. E. 233;

*Proudfoot* v. *Saffle,* 62 W. Va. 51, 57 S. E. 256; *Gwinn* v. *Gwinn,* 77 W. Va. 281, 87 S. E. 371. The most practicable and convenient way from the 77-acre tract to Garner's Branch public road is where the traveled way in dispute was located. This fact is disputed, but the evidence and circumstances sustain the trial chancellor's finding. Its practicability and convenience is evidenced by the selection of that way by the Taylors, their grantee, and others making access to, and egress from, the 77-acre tract. It is not likely that they would have, in those early days, traveled an impracticable and inconvenient way. This way, so traveled, was on that part of the Taylor land afterwards deeded to defendant, and which the witnesses say passes over about 250 or 300 yards of his land. The evidence warrants the conclusion that it has been used for at least forty years by those living on the 77-acre tract, and that those passing over it did so without objection. We deem it needless to discuss plaintiff's right by prescription. Her way of necessity would affirm the decree. Even non-user would not defeat her way of necessity. *Wooldridge* v. *Coughlin,* 46 W. Va. 345, 33 S. E. 233. If her way had not been one of necessity, her long, continuous and uninterrupted use with defendant's knowledge would raise a very strong presumption of a claim of right and the adverse character of the use. *Hawkins* v. *Conner,* 75 W. Va. 220, 83 S. E. 892. But, "a way having been created by necessity for its use cannot be extinguished so long as the necessity continues to exist." *Proudfoot* v. *Saffle,* 62 W. Va. 51, 54, 57 S. E. 256.

We affirm the decree.

*Affirmed.*