THOMAS SPENCE, *an Infant, etc.*

*v.*

BROWNING MOTOR FREIGHT LINES, INC.

(No. 10587)

Submitted September 8, 1953. Decided October 6, 1953.

*Okey P. Keadle, Leo E. Oxley,* Scherr, Meek & Vinson, for plaintiff in error.

*Ramon Woodall, John L. Whitten, J. J. N. Quinlan,* for defendant in error.

RILEY, JUDGE:

Thomas Spence, an infant under the age of twenty-one years, who sues by his next friend, Lucian Spence, instituted this action of trespass on the case in the Circuit Court of Cabell County, against Browning Motor Freight Lines, Inc., a corporation, to recover damages in the amount of twenty-one thousand dollars alleged to have been incurred as the result of a collision between a truck owned by the defendant and operated as a carrier for hire, in which plaintiff was riding, and a truck owned by one Robertis Merritt. To a judgment in plaintiff's favor in the amount of ninety-five hundred dollars, based on a jury verdict in like amount, the defendant prosecutes this writ of error.

On March 6, 1952, about three o'clock in the afternoon, one of defendant's trucks, operated by defendant's employee, Tracey Hatfield, Jr., was proceeding along West Virginia Route No. 10 from the City of Logan toward the City of Huntington; when it collided with a truck driven by Robertis Merritt on State Route No. 10 near the Village of Ferrellsburg, in Lincoln County. At the time of the collision the Merritt truck was proceeding in the opposite direction toward the City of Logan.

On March 6, 1952, and for some time prior thereto, the defendant had established a rule, of which defendant's employee Hatfield had knowledge, that prohibited the defendant's drivers from carrying in any of defend-

ant's trucks any person not on defendant's payroll. The driver Hatfield testified that the rule was well known to him, and that he had discussed it with the plaintiff.

This record discloses that when heavy merchandise was being transported, defendant's drivers were authorized to employ a person, who might be found available at the place where the goods transported were to be discharged, to assist in the unloading, and to pay such person for his services in that connection. Upon the return of the driver, who had employed such assistant, to defendant's home terminal in Huntington, defendant was accustomed to reimburse the driver for such amount as he had paid to such assistant. The defendant motor company did not know the identity of the persons engaged by its drivers to assist in unloading the merchandise. On at least one occasion prior to March 6, 1952, Hatfield, who was required to deliver some items of heavy merchandise, had taken plaintiff with him to assist in the delivery and unloading thereof, a fact which was unknown to the defendant company or any of its executive officers.

On Hatfield's return to the home terminal after the collision, he reported at defendant's office that he had obtained such assistant for the purpose of unloading the merchandise at a cost of two dollars, for which amount he was reimbursed.

On March 5, 1952, the day preceding the collision, Hatfield knew that on the following day he would have a delivery to make in Switzer, and obtained defendant's permission to haul furniture belonging to him and at that time located at Switzer to Huntington, for which he agreed to pay defendant the sum of ten dollars. So, on March 6, Hatfield delivered defendant's merchandise at Switzer, and with the assistance of plaintiff, who had been taken along to help in loading the furniture, he loaded his furniture on the truck, and proceeded without incident from Switzer west in the direction of Huntington to the place of the collision.

At the place where the collision occurred, State Route No. 10 runs in almost a straight line and is generally level. The surface of the road was black surface, in the center of which there was a painted white center line. The paved surface of the road was eighteen feet, nine inches in width. On the right side thereof in the direction defendant's truck was travelling, there was a three-foot berm, and a five-foot berm on the other side of the paved surface of the road. At the time and place the collision occurred the weather was generally clear and the road dry. The Merritt truck, driven by Robertis Merritt, in which one Donald Davis was riding as a passenger, was proceeding along State Route No. 2 toward the City of Logan at a speed of approximately thirty miles an hour. This truck was flat bodied, and was loaded with mine timbers. In the collision the left front of the Merritt truck struck the left front of defendant's truck, which caused the latter to spin around on the road, so that when it finally came to rest it was headed across the road in the general direction from which it had come, with the right front wheel thereof approximately on the center line of the road. The Merritt truck as a result of the collision veered to the right and came to rest on the five-foot berm, with the right front corner against a guardrail on or near the berm. Defendant's driver, Tracey Hatfield, Jr., was slightly injured, and Merritt's passenger, Donald Davis, was uninjured. Merritt was killed, having been thrown from his truck and crushed thereunder; and plaintiff received the injuries upon which this action is based.

There were no eyewitnesses to the collision, other than the occupants of the two trucks. Davis testified that when the collision occurred, he and Merritt were talking; that he did not see defendant's truck until it was on them; and that he then observed that defendant's truck was suddenly cut to the left across the center line of the road, and into the Merritt truck. He admitted, however, that just before the time of the accident he was not paying any attention to defendant's oncoming truck.

Plaintiff testified that when defendant's truck was ten or twenty feet from the Merritt truck, Hatfield cut the truck to the left, and thereby caused it to run into the Merritt truck. At the time of the collision, he testified, that he was "Playing my French Harp."

With this testimony in essential details, Hatfield's version of the collision is in direct conflict. Hatfield testified that when he first saw the Merritt truck approaching some distance away, that is, in the direction of Logan, Merritt's truck was on the right of the center line of the road; and that just before the collision, having seen the Merritt truck begin to veer to its left, he (Hatfield) "jammed on" his brakes, and, being unable to stop the truck, the collision occurred. Hatfield estimated that just before the collision he was driving defendant's truck at a speed of forty-five or forty-six miles an hour; and that the truck was equipped with a governor which cut off the fuel supply when the truck attained a speed of about forty-six or forty-seven miles an hour.

On cross-examination the defendant's driver, Hatfield, answered in the negative the question whether he went to the home of Mr. and Mrs. Lucian Spence after the collision, and, in their presence, "either in words or substance", stated: "I had an accident today and I killed a man, and it was my fault." On rebuttal the Spences, Lucian Spence and Nellie Spence, were permitted to testify that "either in words or substance", in the Spence home, Hatfield stated in their presence, "I killed a man today and it was all my fault."

The grounds of error relied upon by defendant's counsel for reversal of the judgment may be summarized: (1) The court erred in overruling defendant's motion, interposed after all of the evidence had been introduced, to strike the evidence and direct that the jury return a verdict for the defendant, and in refusing to give defendant's instruction No. 1, which was to the effect that the jury find for the defendant; (2) the court erred in permitting Nellie Spence and Lucian Spence to testify,

over defendant's objection, that Tracey Hatfield, Jr., in their presence, stated, "Today I killed a man and it was all my fault"; (3) the court erred in refusing to submit to the jury the interrogatories propounded by the defendant; and (4) the court erred in giving, over defendant's objection, plaintiff's instruction No. 2; in refusing to give defendant's instruction No. 3; and in giving defendant's instruction No. 3, as modified by defendant's instruction No. 3A.

The controlling question bearing on defendant's liability involves the status of plaintiff in defendant's truck at the time of the collision. This record clearly shows that though defendant's driver Hatfield, in transporting his furniture from Switzer to the home terminal at Huntington, was acting in the general scope of his authority, Hatfield, however, had invited plaintiff to accompany him in direct contravention of defendant's rule that its drivers should carry none other than those on its payroll. Hatfield's arrangement to have plaintiff accompany him was not known to the defendant. That Hatfield and plaintiff knew that it was in violation of defendant's established rule for the latter to accompany the former on the trip to and from Logan is established beyond peradventure in this record. In fact, evidently for the purpose of preventing defendant's executive officers from knowing of his intention to accompany Hatfield in violation of the company's rule, plaintiff got into defendant's truck at an agreed point some distance from the defendant's Huntington terminal. It follows that plaintiff was a trespasser so far as defendant was concerned, and, though he was Hatfield's invitee, he bore no such relationship to defendant; and plaintiff cannot recover in this action, unless there is sufficient evidence from which the jury could find from a preponderance thereof that his injuries were incurred as the proximate result of Hatfield's wilful and wanton misconduct in the operation of defendant's truck. *Christie* v. *Mitchell*, 93 W. Va. 200, 116 S. E. 715; *Todorobak* v. *McSurley*, 107 W. Va. 372, 148 S. E. 323; S*hrimplin* v.

754

*Simmons Auto Co.,* 122 W. Va. 248, 9 S. E. 2d 49; *Stone* v. *Rudolph,* 127 W. Va. 335, 32 S. E. 2d 742; *Kelly* v. *Checker White Cab Co.,* 131 W. Va. 816, 50 S. E. 2d 888. If this were a case involving mere negligence which proximately caused an alleged injury, the case would be one for jury determination, as there is a clear conflict in the evidence bearing on the question whether the collision occurred by reason of the plaintiff driving his truck across the white center line on the wrong side of the road into Merritt's oncoming truck, or whether Merritt's truck was caused to be driven across the center line on his wrong side of the road and into defendant's truck. *Fielder* v. *Service Cab Co.,* 122 W. Va. 522, pt. 1 syl., 11 S. E. 2d 115; *Boyce, Admx.* v. *Black,* 123 W. Va. 234, pt. 1 syl., 15 S. E. 2d 588; *Wilson* v. *Co-Operative Transit Co.,* 126 W. Va. 943, 945, 30 S. E. 2d 749; *Adkins* v. *Raleigh Transit Co.,* 127 W. Va. 131, 135, 31 S. E. 2d 775; *Billy* v. *Powell,* 133 W. Va. 278, 282, 55 S. E. 2d 889; *Laphew* v. *Consolidated Bus Lines,* 133 W. Va. 291, 294, 55 S. E. 2d 881; *Frampton* v. *Consolidated Bus Lines,* 134 W. Va. 815, 823, 62 S. E. 2d 126.

This record, however, in our opinion, does not disclose such a state of facts that the jury could reasonably find from a preponderance of the evidence that defendant's driver Hatfield drove defendant's truck across the white center line and into Merritt's oncoming truck with a consciousness that injury would result from such act. In *Kelly* v. *Checker White Cab Co., supra,* on page 822 of the opinion, this Court said: "The difference [between acts of negligence and those which constitute wilful and wanton misconduct] is indicated by this Court in the case of *Stone* v. *Rudolph,* 127 W. Va. 335, 32 S. E. 2d 742. The opinion cites with approval the Virginia case of *Thomas* v. *Snow,* 162 Va. 654, 174 S. E. 837, and in quoting from the *Thomas* case uses this language: " 'Negligence conveys the idea of heedlessness, inattention, inadvertence; willfulness and wantonness convey the idea of purpose or design, actual or constructive. In some

jurisdictions they are used to signify a higher degree of neglect than gross negligence.' " Hatfield in the operation of defendant's truck may have been guilty of mere negligence which proximately caused the collision resulting in plaintiff's injuries, and in a proper case could have so found.

But if Hatfield was negligent in any regard, his negligence did not constitute wilful and wanton misconduct. The trial court, in our opinion, committed reversible error in overruling defendant's motion to strike the evidence and direct that the jury return a verdict for the defendant, and in refusing to give defendant's peremptory instruction No. 1.

This holding renders moot all the questions raised in the grounds of error assigned by counsel for the defendant, but as the verdict in this case must be set aside, the judgment reversed, and a new trial awarded, we deem it advisable for the convenience of counsel in the retrial of the case to settle and determine the other questions raised in this record.

The admission, over defendant's objection, of the testimony of plaintiff's witnesses, Nellie Spence and Lucian Spence, to the effect that defendant's driver Hatfield on the evening of the day of the collision had stated in their presence, in words or substance, that, "Today I killed a man, and it was all my fault", is assigned by defendant as the second ground of error.

If this statement was admitted for the purpose of establishing defendant's liability, it is extrajudicial, and would be inadmissible in evidence under the hearsay rule. In point 1 of the syllabus in the case of *Reynolds* v. *W. T. Grant & Co.*, 117 W. Va. 615, 186 S. E. 603, this Court held: "The extrajudicial declarations of an agent, not made under oath, are not admissible in evidence as admissions against the interest of the principal unless the declarations relate to an act within the authorization of the agent in which the agent was engaged at the time

the declarations were made." To the same effect, see the recent case of *Gilmore* v. *Montgomery Ward & Co.*, 133 W. Va. 342, 56 S. E. 2d 105.

But the testimony of Nellie Spence and Lucian Spence as to Hatfield's statement does not come within the rule stated in the *Reynolds* and *Gilmore* cases. On cross-examination Hatfield answered in the negative to the question directed to him by plaintiff's counsel whether, in words or substance, after the collision he had stated to Mr. and Mrs. Spence that, "I had an accident today and I killed a man, and it was my fault." This record clearly discloses that the testimony of Nellie Spence was offered and admitted by the court for the purpose of contradicting Hatfield's testimony on cross-examination; and the testimony of Lucian Spence, which immediately followed the testimony of his wife, Nellie Spence, was evidently admitted by the court, over objection, for the same limited purpose. This testimony, though introduced for the purpose of establishing defendant's liability, nevertheless relates to the issue being tried, and a proper foundation having been established on Hatfield's examination by counsel for the plaintiff, the admission of the testimony for the purpose of contradiction did not constitute error. In point 1 of the syllabus in *State* v. *Worley*, 82 W. Va. 350, 96 S. E. 56, it was held that: "After the foundation therefor is properly laid by calling his attention to prior statements inconsistent with his testimony, a witness may be impeached by proving such statements, and whether the witness denies or fails to recollect them is not material." See also *Gibbard* v. *Evans*, 87 W. Va. 650, 106 S. E. 37; *State* v. *Price*, 92 W. Va. 542, 115 S. E. 393; *Williams* v. *Commonwealth*, 193 Va. 764, 71 S. E. 2d 73; 20 M. J., Witnesses, Section 56.

As this case is one in which the issues are few and uncomplicated, and one in which it is apparent that the jury would not be assisted in arriving at a correct general verdict by the submission of special interrogatories, the refusal of the trial court to submit to the jury the

special interrogatories, offered by counsel for the defendant, was not an abuse of its discretion. While Code, 56-6-5, provides that: "Upon the trial of any issue or issues by a jury, whether under this section or not, the court may, on motion of any party, direct the jury, in addition to rendering a general verdict, to render separate verdicts upon any one or more of the issues, or to find in writing upon particular questions of fact to be stated in writing", the submission to the jury of special interrogatories in an action at law is within the sound discretion of the trial court, subject, however, to judicial review. *Lovett* v. *Lisagor,* 100 W. Va. 154, 130 S. E. 125; *Mingo County Court* v. *Chattaroy Coal Co.,* 105 W. Va. 321, 142 S. E. 430; *Gilkerson* v. *Baltimore & Ohio Railroad Co.,* 132 W. Va. 133, 51 S. E. 2d 767; *Davis* v. *Pugh,* 133 W. Va. 569, 57 S. E. 2d 9; *Tennessee Gas Transmission Co.* v. *Fox,* 134 W. Va. 106, 58 S. E. 2d 584; *Daugherty* v. *Baltimore & Ohio Railroad Co.,* 135 W. Va. 688, 64 S. E. 2d 231. The provisions of Code, 56-6-5, providing for special interrogatories in an action at law, however, is inapplicable to criminal cases. *State* v. *Boggs,* 87 W. Va. 738, 106 S. E. 47, 18 A. L. R. 1360; *State* v. *Bowles,* 109 W. Va. 174, 153 S. E. 308. In *Lovett* v. *Lisagor, supra,* in point 2 of the syllabus, this Court held: "It is not an abuse of such discretion for the trial court to refuse to submit special interrogatories to a jury in a case where the issues are few and uncomplicated, and it is apparent that special verdicts would not assist the jury in arriving at a correct conclusion."

The trial court, in our opinion, erred in giving plaintiff's instruction No. 2, over defendant's objection. This instruction read:

> "The court further instructs you gentlemen if you believe from a preponderance of all of the evidence in this case that the agent of the Browning Motor Freight, Inc., was negligent and his negligence contributed and was the direct and proximate cause of the plaintiff's injury and the plaintiff, Tommy Spence, was with-

out fault on his part, you are directed by the court to return the following verdict:

" 'We the jury agree and find for the plaintiff' and you shall assess his damage, after taking into consideration his pain and suffering, if any, and the permanency of his injuries, if any, in such amount as you feel will compensate him for such injuries."

This instruction ignores the rule applicable to this case that plaintiff was a trespasser, and recovery must therefore be based on wilful and wanton misconduct. If upon the retrial of this case there is sufficient evidence from which a jury could find that the defendant, either expressly or impliedly, authorized Hatfield to take plaintiff in defendant's truck, the instruction could properly be given.

The trial court properly refused to give defendant's instruction No. 3, as this instruction ignores the plaintiff's status in his relation to the defendant as a trespasser, and the rule, which requires plaintiff to show by a preponderance of the evidence, that defendant's driver Hatfield was guilty of wanton and wilful misconduct.

Defendant's instruction No. 3A properly informed the jury of the rule governing the liability of a defendant to a trespasser, and told the jury that unless it believes from a preponderance of the evidence that the acts on the part of Tracey Hatfield, Jr., constitute wanton and wilful misconduct, the plaintiff cannot recover. This instruction, of course, should not have been given in this case, because there is no evidence from which the jury could have found by a preponderance thereof that the acts of Hatfield in driving defendant's truck constituted wilful and wanton misconduct.

For these reasons the judgment of the Circuit Court of Cabell County is reversed, the verdict of the jury set aside and a new trial awarded.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*