WHEELING ELECTRIC COMPANY,
*A West Virginia Corporation, etc.*

*v.*

JOSEPH C. GIST, JR., *et al.*

(No. 12839)

Submitted February 17, 1970.          Decided April 7, 1970.

70

*McCamic & McCamic, Jeremy C. McCamic, Thomas G. Byrum,* for appellants.

*Bachmann, Hess, Bachmann & Garden, John B. Garden, Charles D. Bell,* for appellee.

BERRY, JUDGE:

This is an appeal from a judgment of the Circuit Court of Brooke County in an eminent domain proceeding instituted by the Wheeling Electric Company, a West Virginia corporation, against the defendants Joseph C. Gist, Jr., Cleda W. Gist, his wife, and James B. Gist. The purpose of the

condemnation proceeding was to obtain an easement for a 345,000 volt transmission line running from Brooke County in West Virginia to Washington County, Pennsylvania. The trial resulted in a verdict and judgment in the amount of $3500 as just compensation for the land taken for the easement over the land owned by the defendants.

A writ of error was granted by this Court May 26, 1969 to the judgment of November 16, 1968, and the case was submitted for decision upon arguments and briefs at the January Regular Term, 1970, of this Court.

The notice and pleading described the land proposed to be taken for the easements as a 150 feet wide easement 3000 feet long over a 141.68 acre tract of land, this easement consisting of an area of 11.20 acres and another 150 feet wide easement 2000 feet long over a 397.187 acre tract consisting of 6.73 acres. In addition, the right to enter upon the adjoining land of the defendants at such times and places as might be reasonably necessary to protect the system was asked for. The reason the plaintiff desired to obtain the easements was to erect thereon a strengthening of interchange system by which various power plants would be tied together and thereby overcome the effect of the failure of any one or more of them. The proposed use of the property was for the construction, operation, inspection, maintenance, protection, repair, renewal and final removal of the proposed transmission lines. The Circuit Court entered an order on October 5, 1964 granting the plaintiff the right to enter the above described property for the purpose stated above, which date would establish the time of taking upon which the value of the land was to be ascertained. The order of the Circuit Court stated that the company or plaintiff had the right to enter on and take possession of the property sought to be taken, with the appurtenant rights and privileges, and with the further right to enter upon any adjoining lands of the defendants at any and all times for access to the easements.

After being given the right of entry the plaintiff entered upon the defendants' land and cut a considerable amount of timber from the easement to be taken on the smaller tract

and sprayed the area with a defoliant. The plaintiff constructed a 1200 foot road into the easement over the larger tract, drove equipment over the road and dug several holes therein. Five towers were to be erected over the two easements. Prior to the taking the smaller tract apparently had been utilized for growing timber and the larger tract for pasturing and farming.

In attempting to prove the value of the land taken for the easement over the smaller tract the defendants introduced evidence of a timber expert of many years of experience who estimated the value of timber and who attempted to introduce a record showing the value of logs and different types of timber cut from the easement and the value thereof at the time of the taking of the easement. In his opinion the value of the timber was $3,457.23. This evidence was not admitted by the court.

The defendants offered several photographs as exhibits in an attempt to show damage to the land adjoining the easement in question caused by the plaintiff's traveling over such land in order to construct the transmission line over the easement. The trial court refused to allow the photographs to be introduced in evidence on the ground that any damage caused in this manner would be subject to a separate action and was not proper in a condemnation proceeding.

The only evidence offered by the defendants relative to the value of the easements taken was by two of the defendants who both testified that the value was $23,832.23. Apparently, from their testimony, it was based on a value of $815 per acre multiplied by 25 acres. The easements taken are clearly shown by the description contained in the pleading and judgment as amounting to only 17.93 acres. It would appear that they attempted to include the acreage used in occupying land beyond 150 feet in width and contained in the road built by the plaintiff as a way of ingress and egress to the easements taken, which additional land, of course, was not asked for in this condemnation proceeding.

The value of $815 per acre was obtained from another transaction which had taken place several months before this

proceeding in which the defendants had sold a right-of-way to the Manufacturer's Light and Heat Company for a gas transmission line at that price per acre. The evidence with regard to this sale is rather confusing. It appears that the Manufacturer's Light and Heat Company had instituted legal proceedings of some kind which were compromised on the basis of the above-mentioned price. There was a dispute in this present case as to the type of legal proceeding involved in connection therewith. It is not clear as to whether it is a condemnation proceeding or an injunction proceeding. One of the defendants testified that an extra amount of $400 was given to them which had nothing to do with the value of the property.

At the conclusion of the defendants' evidence the attorney for the defendants stated on the record that they had never claimed damages to the residue, did not claim it at that time, and would not claim it. The plaintiff then moved to strike all of the evidence of the defendants which was overruled by the trial court.

The evidence introduced by the plaintiff with regard to the market value of the land taken for the easement in question is much more definite. Two qualified real estate appraisers of many years of experience testified on behalf of the plaintiff. They testified that they had carefully examined the land in question as well as comparable areas in that area with regard to the market value thereof and had considered the purpose for which the land was used and had allowed various items of damages in connection with the taking of the easements. One of the witnesses gave the total market value for both easements in the amount of $2125, while the other witness valued the easements taken at $1551.

In the trial court's charge to the jury which was given in lieu of separate instructions, the court charged that in connection with the right of ingress and egress the Wheeling Electric Company as a matter of law would be liable for any future damages which might result by their exercise of such right of ingress and egress and that the jury was therefore

not to consider any future damages in determining any compensation which the defendants were entitled to in this proceeding. This was objected to by the attorney for the defendants. The trial court also instructed the jury in its charge that, in determining the just compensation of the defendants, the jury should consider the occupation of 17.93 acres and allow a fair and just sum for such occupancy, and a sum "if any you believe due" for the right of ingress and egress to the said 17.93 acres as indicated by the evidence. This was not objected to at the time by the attorney for the defendants but is assigned as error in this Court on the grounds that the trial court exceeded its legitimate power in so instructing the jury. The final judgment entered by the trial court described actual areas of easements granted to the plaintiffs and the rights to be exercised, and granted the further right to enter upon any adjoining lands of the defendants at any and all times for the purpose of exercising the above described rights and to enter the easements at such times and places as may be "reasonably necessary to protect the system."

The assignments of error by the defendants and relied on for reversal are in order of importance: 1) The circuit court exceeded its legitimate powers when it granted Wheeling Electric the blanket easement to enter upon any adjoining lands of the defendants at any and all times for access to the described easements, 2) the circuit court erred in not properly instructing the jury that the blanket easement acquired by Wheeling Electric to enter upon any adjoining lands of the defendants at any and all times for access to the easements was a property right acquired by Wheeling Electric for which taking the landowners have a right to just compensation, 3) the circuit court exceeded its legitimate power when it instructed the jury " * * * and a sum if any you believe due for the right of ingress and egress * * * ," 4) the circuit court erred in refusing to allow witness Davis to testify concerning the market value of certain timber destroyed by Wheeling Electric, and 5) the circuit court erred in refusing to allow the introduction of certain pictures taken by the witness and party, James B. Gist, which pictures show the

use made of the "unoccupied right of way" by Wheeling Electric, evidently meaning the damages caused in portions of adjoining land other than the easements themselves.

The first three assignments of error deal with the right of ingress and egress in connection with the easement taken. Where an easement is granted over the defendant's land the right of ingress and egress is included as a matter of necessity, whether it is mentioned in a court order or not. 3 NICHOLS ON EMINENT DOMAIN, § 11.204; *Moore v. Indiana & Michigan Electric Co.*, 229 Ind. 309, 95 N.E.2d 210. This matter is covered in 3 NICHOLS ON EMINENT DOMAIN, § 11.204; in the following language:

> "The right of way for a transmission line includes the right to maintain and service the line. Every reason of public policy in favor of ways of necessity for ingress and egress over the grantor's lands where he has conveyed inaccessible lands to another apply to a right acquired by eminent domain. The fact that the transfer of title is accomplished by a judgment is no reason for not extending the rule."

It is well-settled law, and has been so held in this State, that where a grantor deeds a portion of his land entirely surrounded by his own lands, a way of necessity is implied to the grantee over the grantor's lands. *Wooldridge v. Coughlin*, 46 W.Va. 345, 33 S.E. 233; *Dewitt v. Elmore*, 112 W.Va. 617, 166 S.E. 271.

Although the order of the court purported to give the plaintiff the right to enter on the adjoining lands of the defendants at any and all times for the purpose of exercising the rights to the easement which included the right to inspect, protect, repair, maintain, replace and finally remove five towers and conductors of the transmission lines, the order concluded with a statement that the right to enter was granted at such times and places as may be "reasonably necessary" to protect the system and eliminate hazards. In any event, irrespective of the language of the order with regard to the right of ingress and egress or the lack of such language, such right is limited to the use of such ingress and

egress as may be reasonable and necessary. *Miller v. Skaggs*, 79 W.Va. 645, 91 S.E. 536. However, if any damage is negligently caused to the land by use of ingress and egress actions for damages may be maintained. *Watts v. Norfolk & Western Railway Co.*, 39 W.Va. 196, 19 S.E. 521; *Strouds Creek and Muddlety Railroad Company v. Herold, et al.*, 131 W.Va. 45, 45 S.E.2d 513; *Buckhannon & Northern Railroad Co. v. Great Scott Coal & Coke Co. et al.*, 75 W.Va. 423, 83 S.E. 1031.

Notwithstanding the right of ingress and egress in connection with the taking of an easement it is clear that under the laws of this State not only must there be just compensation for the easement taken, but also compensation for damage to the residue beyond any benefit may be allowed and this would include damages resulting from the creation of any right of ingress or egress over the remaining land at the time of the taking of the easement. 27 Am. Jur. 2d, *Eminent Domain*, § 310; *Buckhannon & Northern Railroad Co. v. Great Scott Coal & Coke Co. et al., supra.*

It is also clear from the authorities that the only method of obtaining damages which may have been caused by ingress and egress in the condemnation proceeding for the taking of an easement is to have them considered as damage to the residue; and in the case at bar the attorney for the defendants emphatically stated they were not claiming any damages to the residue, did not and would not claim such damages, and in such case where damage to the residue is not claimed no damage can be obtained in condemnation proceedings for ingress and egress to a right-of-way or easement. *Chesapeake and Ohio Railway Company v. Johnson, et al.*, 134 W.Va. 619, 60 S.E.2d 203.

It can be seen that not only did the court not exceed its legitimate power in instructing the jury in connection with the right of ingress and egress in the instant case but that it properly instructed the jury and there is no merit to the first three assignments of error by the defendants.

The fifth assignment of error dealing with the refusal of the court to allow the introduction of certain pictures taken

of the property outside of the easement taken comes within the same rule of law as that discussed in the first three assignments of error because any damage to the property shown or indicated by the pictures would have to be shown as damage to the residue which the defendants expressly waived, and if such damage was negligently done, would be a matter for separate action. The court's ruling in connection with this matter was therefore proper.

The fourth assignment of error relates to the refusal to allow the defendants' witnesses to testify to the value of certain timber destroyed by the plaintiff and is also without merit. It has been repeatedly held that the itemizing or listing of the separate value of different elements of property condemned such as the value of minerals, the value of timber and the value of the surface is inadmissible in evidence to prove the market value of the property taken. 29A C.J.S., *Eminent Domain*, § 136(8); 27 AM. JUR. 2d, *Eminent Domain*, § 311; *Strouds Creek and Muddlety Railroad Company v. Herold, et al., supra; Chesapeake and Ohio Railway Company v. Johnson, et al., supra; Chairman of Highway Commission of Virginia v. Fletcher*, 153 Va. 43, 149 S.E. 456.

It is true, however, that all of the different elements contained in, on and under the land or property taken may be considered by competent witnesses in arriving at the market value of the property taken. *[N.&W.] Railway Company v. Davis*, 58 W.Va. 620, 52 S.E. 724; 27 AM. JUR. 2d, *Eminent Domain*, § 311; *Strouds Creek and Muddlety Railroad Company v. Herold, et al., supra; State by State Road Commission v. Snider*, 131 W.Va. 650, 49 S.E.2d 853, *Chesapeake & Ohio Railway Co. v. Johnson, et al., supra.*

It was held in point 2 of the syllabus in the case of *Guyandot Valley R'y Co. v. Buskirk*, 57 W.Va. 417, 50 S.E. 521, that: "The market value in such case is the price for which the land could be sold in the market by a person desirous of selling to a person wishing to buy, both freely exercising prudence and intelligent judgment as to its value, and unaffected by compulsion of any kind."

It is quite true that it is sometimes difficult to obtain a witness who is qualified to testify as to the value of all the elements of the property taken in order to arrive at the actual market value of such land. While such values can not be itemized and then added together in order to arrive at a greater figure than the market value, a qualified witness may obtain the necessary information as to the value of the various elements involved in the land taken and testify as to the value as a whole. The timber expert who testified on behalf of the defendants did not qualify as a real estate expert, and apparently had no knowledge of the market value of the land in question. He testified only as to the value of the timber which is not permissible evidence in such cases.

The evidence of value on behalf of defendants is unsupported by any independent testimony. The property owners did testify to a value per acre paid them in connection with a compromise or settlement arising after a legal proceeding of some nature was involved in purchase of other easements over the defendants' property which ordinarily would be improper testimony unless it could be shown that the previous sale was not influenced by fear of such litigation. 6 M.J., *Eminent Domain*, § 88; *Buckhannon & Northern Railroad Co. v. Great Scott Coal & Coke Co. et al., supra; Monongahela West Penn Public Service Company v. Monongahela Development Company*, 101 W.Va. 165, 132 S.E. 380; *The County Court of Mingo County v. Chattaroy Coal Company et al.*, 105 W.Va. 321, 142 S.E. 430.

For the reasons stated herein, the judgment of the Circuit Court of Brooke County is affirmed.

*Affirmed.*