## CHARLESTON.

CROTTY *v.* NEW RIVER AND POCAHONTAS CONSOLIDATED COAL
COMPANY.

Submitted February 21, 1912.   Decided February 18, 1913.

1.   EASEMENTS—*Ways of Necessity—Implication.*
     A way of necessity over the lands of a grantor is implied
     in a deed, if, by reason of a physical obstruction to access to
     the granted land, the grantee cannot construct a road from a
     considerable portion thereof over the residue without an
     expenditure wholly disproportionate to the value of the land.
     (p. 72).

2.   SAME—*Ways of Necessity—Rights of Grantee.*
     Such a way is appurtenant to the granted land and passes
     to subsequent grantees thereof, and a subsequent grantee of
     land not used at the time of the severance of the larger
     tract by the common owner may, when the use of such way
     becomes necessary to the enjoyment of the land, claim it
     under the remote deed of severance.   (p. 70).

     (ROBINSON and LYNCH, JUDGES, dissenting.)

Appeal from Circuit Court, Fayette County.

Bill by G. E. Crotty against the New River & Pocahontas
Consolidated Coal Company.   Decree for defendant, and plain-
tiff appeals.

     *Reversed, and Injunction Reinstated and Perpetuated.*

*Hubbard & Lee* and *C. R. Summerfield,* for appellant.
*Dillon & Nuckolls,* for appellee.

POFFENBARGER, PRESIDENT.

This bill filed to vindicate the plaintiff's alleged right to a
way over the land of the defendant, claimed as a public one, a
private one by prescription and a private one by necessity, must
be sustained, if at all, upon the last theory, since the evidence
wholly fails to sustain either of the other two.   The appeal is
from a decree dismissing the bill.

The way in question is a short one, only 322 feet in length,
leading from the plaintiff's 4.5 acre lot through the land of the
defendant to a public road.   This lot and the road are on two

separate tracts of land, which, at one time, constituted a portion of a still larger tract, owned, prior to the year 1831, by Henry Banks, under a patent issued by the State of Virginia December 6, 1794. This large tract, containing 12,300 acres, was divided into lots and sold, in 1831 and 1832, John Bowyer becoming the purchaser of lot No. 15 and Samuel Blake of lot No. 21, containing, respectively, 150 acres and 497 acres. The plaintiff's 4.5 acre lot is a portion of the former. At the time of this division, a public road ran through lot No. 15, but there was none through lot No. 21. The portion of lot No. 15 out of which plaintiff's small lot was taken was cut off from the public thoroughfare by a cliff, so high and steep as to render it impossible to go over it without very great expense. This portion containing about 30 acres lies about 400 or 500 feet lower than the table land on which the residue of the tract, through which the road ran, is situated. Above and below the cliff the mountain side is very steep and the cliff itself is nearly perpendicular and 100 feet high. The plaintiff's title goes back regularly to the deed to John Bowyer and that of the defendant to the deed to Samuel Blake. The portion of lot No. 15 lying below the cliffs, excluding the plaintiff's 4.5 acres, is owned in small lots by the heirs of one Wood, and is unimproved. The plaintiff obtained his lot in 1905 and erected a butcher shop thereon. Later he put up a substantial building for residence and mercantile purposes. Until that time, he had been permitted to use the way claimed by him out to the county road constructed on the adjacent land, lot No. 21, long after the division of the Banks land. About the time of the completion of the building, the defendants obstructed the road and denied him the right of use thereof.

When Effie and Frank Roach, the heirs of Woods, conveyed this 4.5 acre lot to the plaintiff, more than 60 years had elapsed from the date of the division of the Banks survey and conveyances of its several parts. They conveyed, not a small lot out of a larger one, but all that had been assigned to them in the partition of the Woods estate. Hence it cannot be said that at the date of this grant there was a grant by implication, on the ground of necessity, of a right of way through their remaining lands. They had none. If, however, there was a way of ne-

cessity included in the partition among the Woods heirs which became appurtenant to this 4.5 acre lot, the deed to that lot to the plaintiff may have carried it. But, as the partitioned land did not extend to the public road in question, that way would avail plaintiff nothing. To sustain his claim, it becomes necessary to go back to the division of the Banks land in the years 1831 and 1832. Whether an owner of land can go back beyond the deed of the immediate grantee to the common source of title, however remote it may be, and claim a way by necessity, as appurtenant to the land, is a vital and far reaching question in the case. The authorities uniformly hold there must have been at some time privity of title. There cannot be a way of necessity over the land of a stranger to the title. *Linkenhoker* v. *Graybill,* 80 Va. 835; *Kimball* v. *Railroad Co.,* 27 N. H. 448; *Pomfret* v. *Ricroft,* 1 Saund. 323; 23 A. & E. Enc. L. 17. Mr. Sergeant Williams's Note 6 to *Pomfret* v. *Ricroft* asserts the right to go back to unity of possession and title, however remote. It says: "If the origin of a way of necessity cannot any longer be traced, but the way has been used without interruption, it must then be claimed as a way either by a grant or prescription, according to the circumstances of the case. Where the fact is, that there existed at one period an unity of possession, it must then be claimed as a way by grant." The principle and conclusion intimated in this note have been embodied in actual decisions. In *Logan* v. *Stogsdale,* 123 Ind. 317, the court, after very thorough consideration of the authorities, upheld the claim to a right of way asserted on the ground of necessity by going back to a remote common grantor, citing *Taylor* v. *Warnaky,* 55 Cal. 350. The following is taken from the opinion: "The decision in the case referred to is sustained by the doctrine, maintained by the ancient and modern authorities, that the original grantor grants, as appurtenant to the parcel expressly conveyed, a way which will enable his grantee to obtain access to the corporeal property expressly conveyed to him. Both the corporeal property and the incorporeal right pass from the grantor at the same time—one as the inseparable incident of the other—and a subsequent grantee must necessarily take the land conveyed to him subject to the burden created by the implied grant." The character and weight of the con-

siderations upon which this implication rests argue strongly the correctness of the theory of the decisions here referred to. Land without means of access is practically valueless. No reasonable use can be made of it, and it has no market value. The presumption of intent on the part of the parties to the conveyance to provide a means of access is so strong, for this reason, that the contrary thereof can hardly be supposed. This brings the implied grant within a well settled principle of construction and interpretation of contracts.

That the land was in a state of nature at the date of the division of the Banks land and there was no road on lot No. 21 nor any occasion for an outlet in that direction for a number of years thereafter are asserted and relied upon as inconsistent with a presumption of intent to grant the way in question. These circumstances are not broad enough in their scope to preclude it. The parties may well be presumed to have contemplated such conditions as the future was likely to bring forth. This principle is asserted in *Uhl* v. *Railroad Co.*, 47 W. Va. 59, in which the following is quoted from Jones on Easements, sec. 323 : "The prevailing view in this country is that a way of necessity is not limited to such use of the land as was actually made and contemplated at the time of the conveyance, but is a way for any use to which the owner may lawfully put the granted land at any time." In that case Judge BRANNON said : "Though such a use of that crossing may not have been dreamed of at the date of the deed, yet the crossing was for use for any purpose which might thereafter be called for in the conveyance from the land of its products—whether a wagon carrying wheat or coal, or a pipe or other appropriate means of carrying gas— so it did not practically impair the use of the right of the railroad to use its tracks." The principle thus applied necessarily includes, or accords with, what has been said in the preceding paragraph. A way of necessity springs out of the deed at the date of the grant and becomes appurtenant to the granted estate. If it includes such a way as is necessary for any purpose to which the land may thereafter be adapted and becomes appurtenant and attaches to the subsequent grant, when the occasion for a broader use of the adjacent land or a heavier burden thereon arises, the right to it is found in the remote

conveyance. In the case just referred to, there was an express grant of a right of way, but not such a way as afterwards became necessary to the full enjoyment of the land and the court held such larger grant had been made by implication. If a remote grant by implication can be invoked to enlarge a way expressly granted, no reason is perceived why recourse cannot be had to one for a way of necessity by implication for property, which at the time, owing to its position and the surrounding circumstances, was unoccupied and in connection with which no road was actually used. According to the legal theory, a way of necessity is granted for any and all purposes for which the land is adapted, and, if the grantee has at the time of the grant occasion for an outlet and demands it he can enforce the right. It is therefore a right appurtenant to the land, and, having become fixed, it goes to subsequent grantees.

As to whether physical obstruction to access to land, such as the insurmountable cliff standing between the plaintiff's lot and the public road on the table land within the boundary of lot No. 15, will sustain an implication of a grant of a way of necessity, the authorities are in conflict, some saying the grantee cannot have a right of way out over the adjacent land of the grantor, if by any means, no matter at what cost, he can get out over his own land, while others say necessity within the meaning of the term as it is used in the law of contracts suffices. The latter class of cases seems to accord with reason and the considerations upon which the rule rests. If the cost of the construction of a right of way or road out over a man's own land would exceed the value of the land itself or be greatly disproportionate thereto, it may well be supposed such means of access was not within the contemplation of the parties, and that a way out over the land of the grantor was contemplated. That a road over the adjacent land of the grantor is more convenient and could be constructed at a lighter cost than one over the grantee's own land will not sustain a grant of such right on the theory of necessity, of course, but, if it is practically impossible to get out over the grantor's own land, there is as clear a case of necessity, within the reasonable meaning of the term, as if it were surrounded by adjacent land of strangers; for, in the latter case, a right of way can generally be secured if a sufficient

amount of money is offered for it, just as a road can be made up such a cliff as is described here by the expenditure of an amount of money wholly disproportionate to the value of the land and so great the grantee cannot be supposed ever to have intended to burden himself with it. Logically it is the necessity that gives rise to a grant by implication, not the character, or form or occasion thereof. Very few, if any, of the cases in which it has been held that a way of necessity does not exist when a man can get to his own property through his own land and that steepness or narrowness of the way does not prevent it, presented such as the situation we have here. In practically all of them, the grantees had sought ways out over the grantors' lands on the ground of convenience and economy only. Such was the case of *Shaver* v. *Edgell,* 48 W. Va. 502. Of the evidence in that case Judge BRANNON said: "It shows that his land runs a long distance along the public highway, and there is no obstruction of access to it, save some tolerably steep ground, and that a very usable road can be made to the highway at small expense, ranging from five dollars up to sixty dollars, according to different witnesses, the most reliable putting the cost at fifteen dollars or twenty dollars." In cases like this, the courts have said there need not be an absolute physical obstruction. The following text from Jones on Easements, sec. 316 is well sustained by authority: "The word is to have a reasonable and liberal interpretation. The way must be reasonably necessary. If it were limited to an absolute physical necessity, a way could not be implied if another way could be made by any amount of labor and expense, or by any possibility. If, for example, the property conveyed were worth but one thousand dollars, it would follow from this construction that the purchaser would not have a right of way over the intervening piece as appurtenant to the land, provided he could make another way at an expense of one hundred thousand dollars." See *Pettingill* v. *Porter et als.,* 8 Allen 1; *Smith* v. *Griffin,* 14 Col. 429; *Oliver* v. *Pitman,* 98 Mass. 46; *Schmidt* v. *Quinn,* 136 Mass. 575; *Paine* v. *Chandler,* 134 N. Y. 385; *Goodall* v. *Godfrey,* 53 Vt. 219; *O'Rorke* v. *Smith,* 11 R. I. 259.

Applying the foregoing principles and authorities, we think the plaintiff is entitled to a way of necessity. The practicability

of a way by a different course is relied upon, but, as it too would pass over a portion of lot No. 21 and be very inconvenient as compared with the road plaintiff now uses, the fact constitutes no defense.

The decree complained of will be reversed and the injunction reinstated and perpetuated.

*Reversed, and Injunction Reinstated and Perpetuated.*