693 S.E.2d 800

**Ronald D. COBB and Deborah Herrald Cobb, Plaintiffs below, Appellees**

v.

**Thomas S. DAUGHERTY and Christine A. Daugherty, f/k/a Christine Klapproth, Defendants below, Appellants.**

No. 35015.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 10, 2010.

Decided April 19, 2010.

George A. Daugherty, Esq., Daugherty Law Office, Dunbar, WV, for the Appellants.

O. Gay Elmore, Jr., Esq., Elmore & Elmore, Charleston, WV, for the Appellees.

KETCHUM, Justice:

This action concerning the law of easements by implication—specifically, easements implied by necessity and easements implied

by prior use—is before this Court upon the appeal of Thomas S. and Christine A. Daugherty from the December 22, 2008, order of the Circuit Court of Kanawha County, West Virginia, denying their renewed motion for judgment as a matter of law and their alternative motion for a new trial.

The appellees, Ronald D. and Deborah H. Cobb, adjoining neighbors of the Daughertys, filed an action in the Circuit Court alleging, *inter alia,* the right to an easement by implication across the Daughertys' property. According to the Cobbs, an implied easement in the form of a roadway extends across the Daugherty property to the Cobb property. The Cobbs contend the easement was used in the past as access to a small building near their swimming pool. They also contend it was occasionally used to bring in construction and service vehicles and materials and supplies for the Cobbs' various home improvement projects. At the conclusion of the September 2008 trial, the jury found that the Cobbs established a right to an easement by implication across the Daughertys' property by clear and convincing evidence.

Although a number of trial errors are raised by the Daughertys, we granted this appeal upon the sole question of whether the Cobbs established an easement implied by necessity, and/or an easement implied by a prior use of the Daughertys' land.[1]

Upon a thorough review of the record and the law in this area, this Court is of the opinion that the Circuit Court committed error in submitting the implied easement question to the jury, rather than granting the Daughertys' motion for judgment as a matter of law. Consequently, the December 22, 2008, order of the Circuit Court of Kanawha County is reversed, and judgment is entered in favor of the appellants, Thomas S. and Christine A. Daugherty, as a matter of law.

## I.

### Factual Background

This action concerns three adjacent lots in the South Hills area of Charleston, West Virginia, namely, Lots 3, 4 and 5, Block 28, South Charleston Improvement Company Addition. The Cobbs reside on Lot 3, and the Daughertys reside on Lot 5. The subject of this litigation is Lot 4, a vacant lot between the parties' homes. The record demonstrates that all three lots front on Circle Road and that the Cobbs have access to their home on Circle Road by way of a driveway, an access completely separate from the alleged easement. Nevertheless, the Cobbs insist that they have an easement by implication, either by necessity or by prior use, across the Daughertys' adjoining lot leading to a small building near their swimming pool located on the middle to rear portion of their land.

It is undisputed that no explicit easements of any kind, other than those for utilities such as water and electricity, are recorded in the chain of title of Lots 3, 4 and 5 for a way, or road, across Lot 4. The question we must resolve is whether an easement for a way or road across Lot 4 is implicit in the circumstances of this case.

The chain of title shows that Lot 4 was divided in half by means of a boundary line perpendicular to Circle Road. Currently, the south side of Lot 4 is adjacent to and owned by the Cobbs. The north side of Lot 4 is adjacent to and owned by the Daughertys. Along the Daughertys' side of Lot 4, the curb of Circle Road is interrupted by a small concrete ramp described below as a "cut-in." According to the Cobbs, a way or drive begins at the cut-in, traverses the Daughertys' half of Lot 4, and extends across the Cobbs' half of Lot 4 toward the middle or rear of Lot 3 (owned by the Cobbs). The record is unclear how far the way or drive extends onto the Cobb property: the Cobbs indicated below that the way or drive extends to Lot 3, but a survey map in the record dated October 14, 2005, depicts the way or drive as terminating at a small building on the Cobbs' half of Lot 4.

---

1. The Cobbs alleged various other types of easement or rights of way across the Daughertys' property. However, the Circuit Court by order, and later, the jury, ruled against the Cobbs on those contentions. Those rulings and findings were not appealed by the Cobbs. The only issue remaining for this Court to consider is whether the evidence at trial proved the existence of an easement implied by necessity or by prior use.

In 1979, the Cobbs purchased Lot 3 and constructed a home. In 1980, Larry and Diane Wilder conveyed Lot 4 to Robert L. Hudson, Sr. *et al.,* at which time the cut-in and drive crossing Lot 4 were allegedly established. Soon after, in 1981, Hudson conveyed all of Lot 4 to the appellees, Ronald D. and Deborah H. Cobb. At that point, the Cobbs owned Lot 3 and the entirety of Lot 4.

In 1983, the Cobbs divided Lot 4 and conveyed the north half of Lot 4 to their neighbors and owners of Lot 5, David and Nancy Darrah. There is nothing in the record to show, at the time Lot 4 was divided in 1983, that a way or road had been continuously used on any portion of Lot 4. Subsequently, in 1984, the Cobbs also conveyed the south half of Lot 4 to the Darrahs. Nothing in the chain of title of record indicates that the Cobbs retained any interest in Lot 4 at that point. No easements were recorded, and the entirety of Lot 4 belonged to the Darrahs.

In 1987, the Cobbs purchased the south half of Lot 4 (the half bordering their Lot 3) back from the Darrahs in order to construct a swimming pool next to Lot 3. A small building was also constructed near the swimming pool. Since 1987, the Cobbs have been the sole owners of Lot 3 and the south half of Lot 4.

The Daughertys acquired the north half of Lot 4, in addition to their interest in Lot 5, from the Darrahs in 1994. Since 1994, the Daughertys have been the sole owners of the north half of Lot 4, as well as Lot 5.

The Cobbs contend that an easement by implication across the Daughertys' half of Lot 4 is needed as the only practical access for service vehicles to the middle or rear portion of their property for various home improvement projects. The Cobbs assert that they used and maintained the drive or approach across the Daughertys' half of Lot 4 for that purpose in the past, and that the

drive was apparent when the Daughertys purchased the property in 1994.

The Daughertys contend that their title examination revealed nothing about an easement for the alleged drive and that, beyond observing the cut-in on Circle Road, they saw no drive across their property. The Daughertys assert that, nevertheless, they gave permission to the Cobbs to cross the north half of Lot 4 from time to time.

## II.

### Procedural Background

In August 2005, the Cobbs filed a complaint in the Circuit Court of Kanawha County against the Daughertys seeking injunctive and declaratory relief with regard to the alleged implied easement. The Cobbs' theory of easement by implication appeared in the second amended complaint filed in June 2006.[2] As the litigation proceeded, the Daughertys' motion for summary judgment was denied, and the action went to trial in September 2008. The Daughertys' motion for a directed verdict during the trial was also denied by the Circuit Court.

On September 12, 2008, the jury found that the Cobbs established a right to a generic "easement by implication" over the Daughertys' portion of Lot 4 by clear and convincing evidence. The Daughertys renewed their motion for judgment as a matter of law and, in the alternative, filed a motion for a new trial. Following a hearing, the Circuit Court denied the motions, as reflected in the order of December 22, 2008.

Thereafter, this Court entered an order granting an appeal upon the assignment of error relating to whether, as a matter of law, the Cobbs introduced evidence sufficient to establish an easement for a way or road across the Daughertys' half of Lot 4, implied by necessity, or an easement implied by the prior use of Lot 4.

---

**2.** The second amended complaint alleged a right of access across the Daughertys' north half of Lot 4 on the basis of: (1) easement by implication, (2) prescriptive easement and (3) easement by estoppel. The Circuit Court directed a verdict in favor of the Daughertys on the claim of prescrip-

tive easement. Thereafter, the jury found in favor of the Cobbs upon the claim of easement by implication, but against the Cobbs concerning easement by estoppel. The claims of prescriptive easement and easement by estoppel have been finally decided and are not before this Court.

## III.

## Standard of Review

As stated above, the Circuit Court denied the Daughertys' post-trial, renewed motion for judgment as a matter of law. In syllabus point 1 of *Fredeking v. Tyler*, 224 W.Va. 1, 680 S.E.2d 16 (2009), this Court noted that the standard of review with respect to an order granting or denying a renewed motion for judgment as a matter of law, after trial, is *de novo*.

## IV.

## Discussion

■ This case requires us to examine our law of easements. A lawyer desiring to understand the complicated law of easements in West Virginia should start by reading a recent article by Dean John W. Fisher, II, "A Survey of the Law of Easements in West Virginia," 112 *W.Va.L.Rev.* 637 (2010). This article untangles the loosely written and confusing decisions of this Court of the late 1800s and early 1900s, decisions which sought to reach equitable results in fact-specific cases.

■ An easement is a right that one person has to use the land of another person, for a specific purpose.[3] "The land benefitting from an easement is called the *dominant estate;* the land burdened by an easement is called the *servient estate.*" *Newman v. Michel,* 224 W.Va. 735, 688 S.E.2d 610, 615–16 (2009).

■ The general rule (with several exceptions not important to the instant case) is that an easement can be created in three ways: by prescription—"the easement equivalent of adverse possession;"[4] by an express grant or reservation; or, as the parties argue in this case, by implication from the particular set of facts and circumstances.[5]

---

3. "An easement may be defined as the right one person has to use the lands of another for a specific purpose and is a distinct estate from the ownership of the soil itself." *Newman v. Michel,* 224 W.Va. 735, 688 S.E.2d 610, 615 (2009) (*quoting Kelly v. Rainelle Coal Co.,* 135 W.Va. 594, 604, 64 S.E.2d 606, 613 (1951)). *See also, Restatement (Third) of Property* § 1.2(1)(2000) ("[a]n easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement."); *Black's Law Dictionary* (8th ed. 2004) (an "easement" is "[a]n interest in land owned by another person, consisting of the right to use or control the land, or an area *above or below it, for a specific* limited purpose (such as to cross it for access to a public road). The land benefitting from an easement is called the *dominant estate;* the land burdened by an easement is called the *servient estate.* Unlike a lease or license, an easement may last forever, but it does not give the holder the right to possess, take from, improve, or sell the land. The primary recognized easements are (1) a right-of-way, (2) a right of entry for any purpose relating to the dominant estate, (3) a right to the support of land and buildings, (4) a right of light and air, (5) a right to water, (6) a right to do some act that would otherwise amount to a nuisance, and (7) a right to place or keep something on the servient estate.").

4. John W. Fisher, II, "A Survey of the Law of Easements in West Virginia," 112 *W.Va.L.Rev.* 637, 639 (2010). The elements of an easement by prescription were stated in syllabus point 1 of *Town of Paden City v. Felton,* 136 W.Va. 127, 66 S.E.2d 280 (1951):

To establish an easement by prescription there must be continued and uninterrupted use or enjoyment for at least ten years, identity of the thing enjoyed, and a claim of right adverse to the owner of the land, known to and acquiesced in by him; but if the use is by permission of the owner, an easement is not created by such use.

5. *See also, Town of Paden City v. Felton, supra,* 136 W.Va. at 136, 66 S.E.2d at 286. (with citations omitted), where we stated:

The general rule, subject to several exceptions, is that an easement can be created only by grant, express or implied, or by prescription, which presupposes a grant. An easement may, however, be created by agreement or covenant as well as by grant. Many authorities say that, as an exception to the general rule just stated, an easement may sometimes be created by estoppel. One eminent authority states that an easement may be created or acquired by six different methods: express grant, reservation or exception in a deed, implied grant, prescription, a statutory proceeding usually under the power of eminent domain, and estoppel.

In his law review article, Dean Fisher suggests the following ways of creating an easement, beginning with:

... express easements. As an interest in land, the Statute of Frauds and the Recording Acts are applicable to express easements with much of the litigation of express easements involving the construction of the language used in their creation.

The other methods by which easements are created are by the application of principles or

■ An implied easement is one that is "graft[ed] . . . onto a land transaction in order to do justice in a particular case." James W. Ely, Jr. and Jon W. Bruce, *The Law of Easements and Licenses in Land* § 4.1 (West 2002). This Court has made it clear that "[t]he law does not favor the creation of easements by implied grant or reservation." Syllabus point 1, *Stuart v. Lake Washington Realty*, 141 W.Va. 627, 92 S.E.2d 891 (1956). *See also*, 6B M.J., *Easements* § 13 (Lexis Law Pub. 1998). "Courts must be very careful before decreeing upon one man's land in favor of another without compensation such an incumbrance as a way, permanently impairing that man's dominion and ownership, which next to life and liberty, is the most valuable of rights inhering in the citizen." *Crosier v. Brown*, 66 W.Va. 273, 275, 66 S.E. 326, 327 (1909).

■ Accordingly, "[t]he burden of proving an easement rests on the party claiming such right and must be established by clear and convincing proof." Syllabus point 1, *Berkeley Development Corp. v. Hutzler*, 159 W.Va. 844, 229 S.E.2d 732 (1976).

■ There are two forms of implied easements: an easement implied by necessity (which in West Virginia is called a "way of necessity"), and an easement implied by a prior use of the land (also called an easement implied from a "quasi-easement").[6] Both types of implied easements arise from some necessity created at the time of the division of an original tract of land into two or more parcels. However, while the elements for proving the existence of these two implied easements are somewhat similar, as we discuss below, there are significant differences. The attorneys for the Cobbs and the Daughertys, as well as the circuit court, appear to have confused and intermingled the standards for both easement types in the jury instructions.[7] We granted appeal in this case to explicate and clarify the elements necessary to prove both types of implied easements.

### A. Easements Implied by Necessity

A court once noted that, "Few things are as certain as death, taxes and the legal entanglement that follows a sale of landlocked real estate." *Bob Daniels and Sons v. Weav-*

---

elements of law to a particular set of facts. These "implied" easements include prescriptive easements, the easement equivalent of adverse possession; ways of necessities, which rest upon a presumption that parties would not intend to "landlock" conveyed or retained property; easements implied from quasi-easements, which arise from the fact that a person does not have an easement across, or through, their own property; and easements by estoppel, which involve the application of the equitable principle of estoppel to easement situations.

Fisher, *supra*, 112 *W.Va.L.Rev.* at 637, 639.

6. *See* Ely and Bruce, *supra* at § 4.2 ("Common-law implied easements traditionally fall into two categories: easements of necessity and easements implied from quasi-easements. Easements of necessity, also called easements by necessity or ways of necessity, are typically implied to provide access to a landlocked parcel. Easements implied from quasi-easements, also called implied easements or easements by implication, are based on a landowner's prior use of part of the landowner's property (the quasi-servient tenement) for the benefit of another portion of the property (the quasi-dominant tenement). Such use does not amount to a true easement because one cannot obtain an easement in one's own land. Instead, it constitutes a quasi-easement that may ripen into an implied easement once

either the quasi-servient tenement or the quasi-dominant tenement is transferred to a third party."). *See also*, *Hillary Corp. v. U.S. Cold Storage, Inc.*, 250 Neb. 397, 407, 550 N.W.2d 889, 895 (1996) ("[T]here are two types of implied easements: (1) those that arise as an element of necessity or (2) those that arise from what has been said or done by the parties to the transaction.").

7. Three elements—common ownership, transfer of part of the land (severance), and necessity of some kind—are required in both cases. The fundamental distinction is that easements implied from quasi-easements are based on prior use. If such preexisting use exists, courts often require a showing of lesser necessity, at least for an implied grant.

Unfortunately, attorneys and judges often fail to distinguish between these two types of common-law implied easements. As a result, appellate briefs and court opinions frequently contain analysis that combines and confuses the elements of these distinct concepts.

Ely and Bruce, *supra* at § 4:2. *See also*, *Hoffman v. Shoemaker*, 69 W.Va. 233, 238, 71 S.E. 198, 200 (1911) ("Judges and text-writers do not always stop to define these terms. Hence the danger of mis-apprehension on the part of the reader and the necessity of noting the facts in respect to the terms used.").

*er,* 106 Idaho 535, 538, 681 P.2d 1010, 1013 (Idaho Ct.App.1984). Those legal entanglements led to the creation of easements implied by necessity, also called ways of necessity.

 An easement implied by necessity arises when the owner of a unified tract of land severs the tract into two (or more) smaller parcels, and then conveys one of those parcels that is of such a nature and extent that either the parcel conveyed or the parcel retained is landlocked, and either entirely surrounded by the land from which it is severed, or by this land and the land of strangers. Our law is clear that, in such cases, the owner of the landlocked parcel implicitly receives a right of way—a way of necessity—across the other tract of land. As we stated in syllabus point 1 of *Wooldridge v. Coughlin,* 46 W.Va. 345, 33 S.E. 233 (1899):

A way of necessity exists where land granted is completely environed by land of the grantor, or partially by his land and the land of strangers. The law implies from these facts that a private right of way over the grantor's lands was granted to the grantee as appurtenant to the estate.

*In accord,* syllabus point 2, *Gwinn v. Gwinn,* 77 W.Va. 281, 87 S.E. 371 (1915). The more modern statement of this rule was set forth in syllabus point 4 of *Berkeley Development Corp. v. Hutzler,* 159 W.Va. 844, 229 S.E.2d 732 (1976), where we stated:

Where one owns and conveys a portion of his land which is completely surrounded by the retained land or partially by the land of the grantor and the land of others, without expressly providing a means of ingress and egress, and where there is no other reasonable means of access to the granted land, the law implies an easement in favor of the grantee over the retained portion of the original land of the grantor.[8]

 To establish an easement implied by necessity, a party must prove four elements: (1) unity of ownership of the dominant and the servient estates; (2) severance (that is, a transfer of the dominant and/or servient estates to another); (3) proof that, at the time of the severance, the easement was strictly necessary for the benefit of either the parcel transferred or the parcel retained; and (4) a continuing necessity for an easement.[9]

 The driving force behind an easement implied by necessity is purely econom-

---

8. For additional authority, *see* Syllabus, *Rogerson v. Shepherd,* 33 W.Va. 307, 10 S.E. 632 (1889) ("[W]here a party sells two adjoining tracts of land from one of which there is access to a public highway only by passing over the other, the fact creates a right of way, of necessity[.]"); syllabus point 2, *Boyd v. Woolwine,* 40 W.Va. 282, 21 S.E. 1020 (1895) ("When a man grants land to another in the middle of land retained, he impliedly gives the grantee a way to come at it across the land retained. This is an instance of what is called a 'way of necessity.'"); *Dewitt v. Elmore,* 112 W.Va. 617, 621, 166 S.E. 271, 273 (1932) ("It is quite well-settled law that, where a grantor deeds a portion of his land entirely surrounded by his own lands, a way of necessity is implied to the grantee over the grantor's lands."); *Derifield v. Maynard,* 126 W.Va. 750, 754, 30 S.E.2d 10, 12 (1944) ("A way of necessity usually arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part conveyed or the part retained is entirely surrounded by the land from which it is severed or by this land and the land of strangers."); *Wheeling Electric Co. v. Gist,* 154 W.Va. 69, 75, 173 S.E.2d 336, 340 (1970) ("It is well settled law, and has been so held in this State, that where a grantor deeds a portion of his land entirely surrounded by his own lands, a way of

necessity is implied to the grantee over the grantor's lands."); *Canei v. Culley,* 179 W.Va. 797, 798, 374 S.E.2d 523, 524 (1988) *(per curiam )* ("A way of necessity is an easement founded on an implied grant or implied reservation.... A way of necessity usually arises when there is a conveyance of a part of a tract of land such that either the part conveyed or the part retained has no reasonable access to the outside."). *See also, Johnson v. Mays,* 216 Neb. 890, 895, 346 N.W.2d 401, 404 (1984) ("A way of necessity usually arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part conveyed or the part retained is entirely surrounded by the land from which it is severed or by this land and the land of strangers.").

9. *See* Fisher, *supra,* 112 *W.Va.L.Rev.* at 637, 705 (with citations and footnotes omitted):

Easements of necessity, also called easements by necessity or ways of necessity, are typically implied to provide access to a landlocked parcel. The traditional requirements for its creation are (1) common ownership, (2) severance i.e. a transfer of a part of the land, (3) necessity at severance for an easement to benefit either the parcel transferred or the parcel retained, and (4) continuing necessity for an easement.

ic. "Land without means of access is practically valueless. No reasonable use can be made of it, and it has no market value. The presumption of intent on the part of the parties to the conveyance to provide a means of access is so strong ... that the contrary thereof can hardly be supposed." *Crotty v. New River & Pocahontas Consol. Coal Co.*, 72 W.Va. 68, 71, 78 S.E. 233, 234 (1913). To ensure that land can be reasonably used, "the law implies an easement over the servient estate where the grantor owns and conveys a portion of the original lands without expressly providing a means of ingress and egress." *Berkeley Development Corp. v. Hutzler*, 159 W.Va. 844, 850, 229 S.E.2d 732, 735 (1976). *See also, Wolf v. Owens*, 340 Mont. 74, 79, 172 P.3d 124, 128 (2007) ("The way of necessity arises when the strong public policy against shutting off a tract of land and thus rendering it unusable gives rise to a fictional intent defeating any such restraint.").

An easement implied by necessity "is not established by the mere fact that one's land is surrounded by the lands of others cutting him off from public ways." *Proudfoot v. Saffle*, 62 W.Va. 51, 54, 57 S.E. 256, 257 (1907). The easement arises only when a unified tract is severed—if there is no evidence that the purported dominant estate and servient estate were ever a part of the same tract of land, there cannot be a way of necessity. *Derifield v. Maynard*, 126 W.Va. at 755, 30 S.E.2d at 13. The easement also arises only if, at the time of severance, there was no reasonable access to the landlocked property except by way of the claimed ease-

ment. This Court has stated that a party claiming an easement of necessity "can go back beyond the deed of the immediate grantee to the common source of title, however remote it may be, and claim a way by necessity, as appurtenant to the land[.]" *Crotty v. New River & Pocahontas Consol. Coal Co.*, 72 W.Va. at 70, 78 S.E. at 234. Put another way: "A way of necessity springs out of the deed at the date of the grant, and becomes appurtenant to the granted estate." *Id.*, 72 W.Va. at 71, 78 S.E. at 234.

Of the four elements required to prove an implied easement by necessity, it is the third and fourth elements—whether the easement was "strictly necessary" at the time of severance, and whether that necessity continues to exist—that produce the most confusion and uncertainty. For instance, in *Derifield v. Maynard*, 126 W.Va. at 755, 30 S.E.2d at 13, we indicated that the strictly necessary requirement could be met by showing a "real necessity" and a "reasonable necessity as distinguished from mere convenience," but not an "absolute necessity." [10] In syllabus point 1 of *Post v. Wallace*, 119 W.Va. 132, 192 S.E. 112 (1937), we found the strict necessity requirement met when there was a showing that the right of way was "reasonably necessary to the enjoyment of the property to which such right is sought to be attached." But, in *Crotty v. New River & Pocahontas Consol. Coal Co.*, 72 W.Va. at 72–73, 78 S.E. at 235, we said there is "a clear [ ] case of necessity" only when "it is practically impossible to get out over the grantor's own land," and noted that in most cases landowners sought to obtain a way of necessity "on the ground of convenience and economy only." [11]

---

**10.** "[T]he rule is that a real necessity must exist, and, in some cases, it is said that it must be indispensable. The more modern rule seems to be that the rule of a strict necessity applicable to an implied reservation or grant of an easement is not limited to one of absolute necessity, but to reasonable necessity as distinguished from mere convenience." (citations and quotations omitted). *See also*, Syllabus, *Nomar v. Ballard*, 134 W.Va. 492, 60 S.E.2d 710 (1950) (an implied easement for light and air will be enforced "only in cases of real necessity.")

**11.** In *Crotty*, the plaintiff sought a way of necessity across the defendant's land, because the plaintiff's lot was cut off from the public road by an "insurmountable cliff." We said:

If the cost of the construction of a right of way or road out over a man's own land would exceed the value of the land itself or be greatly disproportionate thereto, it may well be supposed such means of access was not within the contemplation of the parties, and that a way out over the land of the grantor was contemplated. That a road over the adjacent land of the grantor is more convenient and could be constructed at a lighter cost than one over the grantee's own land will not sustain a grant of such right on the theory of necessity, of course, but, if it is practically impossible to get out over the grantor's own land, there is as clear a case of necessity, within the reasonable meaning of the term, as if it were surrounded by adjacent land of strangers; for, in the latter

On several occasions, we have noted that "[i]f one has a reasonable outlet over his own property, he cannot exact a more convenient way as of necessity over the premises of another." Syllabus point 2, *Dorsey v. Dorsey*, 109 W.Va. 111, 153 S.E. 146 (1930).[12]

██ One reason courts have required parties to show an easement is implied by strict necessity is to "prohibit[ ] the imposition of a burden upon an estate for the mere convenience of another estate. Stated otherwise, it may be said that the necessity required is one of economical or physical use of the land and not merely an advantageous use of the land." *Payne v. Edmonson*, 712 S.W.2d 793, 796 (Tex.App.1986).

The more important reason that courts have required a showing of "strict necessity" for an easement is that, in many cases, it is the grantor or seller of the disputed servient estate who is seeking to impose the easement, to the detriment of the grantee or buyer. We have noted that a grantor should only rarely be allowed to derogate from his or her explicit deed and, by implication, take back from the grantee a way of ingress or egress.[13] One treatise similarly suggests that the "strict necessity" or "absolute necessity" standard promotes certainty and stability in titles:

> The strict necessity standard is based on the belief that necessity is required as a measure of the parties' intent to create an easement and that such intent should be inferred in only the most compelling circumstances, such as when the alleged dominant tenement is otherwise inaccessible. Courts further justify the strict-necessity rule as promoting certainty and stability of titles.

Ely and Bruce, *supra* at § 4:10.

██ Furthermore, regardless of the degree of necessity that is shown, our cases are clear that once the necessity ceases to exist, the way of necessity likewise ceases to exist.[14] *See, e.g.*, *Berkeley Development Corp.* arises . . . where it appears that there are other adequate modes of ingress and egress to that part of the dominant estate asserting the right."); syllabus point 1, *Post v. Wallace*, 119 W.Va. 132, 192 S.E. 112 (1937) ("An implied grant or reservation of a right of way by necessity . . . does not arise where the owner of such property has a reasonably convenient outlet from his property to a public highway at the time he acquires title thereto.").

---

case, a right of way can generally be secured if a sufficient amount of money is offered for it, just as a road can be made up such a cliff as is described here by the expenditure of an amount of money wholly disproportionate to the value of the land, and so great the grantee cannot be supposed ever to have intended to burden himself with it. . . . Very few, if any, of the cases in which it has been held that a way of necessity does not exist when a man can get to his own property through his own land and that steepness or narrowness of the way does not prevent it, presented such as the situation we have here. In practically all of them, the grantees had sought ways out over the grantors' lands on the ground of convenience and economy only.
*Crotty*, 72 W.Va. at 72–73, 78 S.E. at 235.

**12.** *In accord, Shaver v. Edgell*, 48 W.Va. 502, 509, 37 S.E. 664, 667 (1900) ("That the way through his own land is too steep or too narrow does not alter the case. It is only where there is no way through his own land that the right of way through the land of another can exist. That a person claiming a way of necessity has already one way is a good plea[.]"); *Crosier v. Brown*, 66 W.Va. 273, 278, 66 S.E. 326, 328 (1909) (A way of necessity cannot exist "because a public way runs through Crosier's tract, and, in the partition many years ago of a large tract of which Brown's and Crosier's tracts were a part, the lots were so laid off as to give outlet from each tract to a public road. Crosier's tract was so located as to include this public road as its outlet."); *Beckley Nat. Exchange Bank v. Lilly*, 116 W.Va. 608, 182 S.E. 767 (1935) ("no right of way of necessity

**13.** For example, in *Shaver v. Edgell*, 48 W.Va. 502, 37 S.E. 664, 667 (1900), we said:

> There is a great difference between an implied grant and an implied reservation. If one man grants land to another, he impliedly grants those things absolutely essential for the enjoyment of the land granted, as, for instance, a way over the grantor's land to meet necessity. But he does not reserve a way over the grantee's land for the use of the grantor's remaining land, without he puts in a reservation; for he cannot, by mere implication, derogate from his own deed by destroying or rendering less valuable what he granted. To say that a grantor reserves that which may be beneficial to him, but most injurious to his grantee, is contrary to the principle on which implied grants depend. That principle is that a grantor shall not detract from his grant, or render what he granted less beneficial to his grantee.

**14.** As we discuss in the next section of this opinion, this fourth element is what most distinguishes easements implied by necessity from

*v. Hutzler*, 159 W.Va. 844, 850, 229 S.E.2d 732, 735–36 (1976) ("A way of necessity having been created by implication for the benefit of the grantee of the dominant estate or his successors, thereafter, it cannot be extinguished so long as the necessity continues to exist.").

▬▬▬ We therefore hold that for a party to establish an easement implied by necessity (that is, to establish a way of necessity), the party must show that the easement across the servient estate is strictly necessary to the productive, beneficial, economical or physical use of the dominant estate. Mere convenience, or even reasonable necessity are insufficient. If there is an alternate route, even if more difficult or more expensive to use, then no easement is implied by necessity. An easement by necessity is implied only where any other route would be practicably or economically impossible.[15]

▬▬▬ We now turn to the facts of the case on appeal. The record below indicates that the Cobbs can only establish the first two of the four elements needed to claim an easement implied by necessity. First, the Cobbs were the owners of a unified Lot 4. Second, in 1983 the Cobbs severed Lot 4 into the alleged dominant estate (the southern half), which they sold but repurchased, and the alleged servient estate (the northern half), which they sold.

No evidence was introduced by the Cobbs to show that, at the time of the 1983 sever-ance of Lot 4, the easement sought was strictly necessary or that the necessity for the easement continues to this day. The record shows that all three of the lots mentioned in this case—Lot 3 and the southern half of Lot 4 owned by the Cobbs, and the northern half of Lot 4 as well as Lot 5 owned by the Daughertys—border on a public way, Circle Road. The evidence presented below suggests that a drive, or way, across the Daughertys' portion of Lot 4 would give the Cobbs a convenient access to Circle Road; the evidence did not, however, demonstrate by clear and convincing evidence that it was practicably or economically impossible for the Cobbs to access Circle Road by any other way.

Accordingly, we conclude as a matter of law that the Cobbs failed to establish the existence of an easement implied by necessity across the Daughertys' land.

## B. Easements Implied by Prior Use

▬▬ An easement implied by a prior or preexisting use arises in situations where, before a unified tract of land was severed into smaller parcels, the landowner used one section of his unified tract in a way that benefitted another portion of the unified tract—say, for a road or a pipeline. After the unified tract of land was severed into different parcels, if that prior use was apparent to the parties to the severance, continuous, and necessary to the enjoyment of one of the parcels, then an easement can be said

easements implied by prior use. While an easement implied by prior use must have been reasonably necessary at the time of severance of a unified estate, the existence of the easement continues *even if the necessity no longer exists.*

15. As an example of what is "practicably or economically impossible," *see Crotty v. New River and Pocahontas Consol. Coal Co.*, 72 W.Va. 68, 78 S.E. 233 (1913). In *Crotty*, a tract of land bordered on a public road, but access to the road was obstructed by an insurmountable cliff, "nearly perpendicular and 100 feet high," between the tract and the road. The Court concluded that construction of a road was possible, but not practicable and only by "the expenditure of an amount of money wholly disproportionate to the value of the land and so great the grantee cannot be supposed ever to have intended to burden himself with it." 72 W.Va. at 73, 78 S.E. at 235. The Court concluded that these facts

established a strict necessity for a road across an adjoining lot to access the public road.

For an example of what *is* practicable and economically possible, *see Dorsey v. Dorsey*, 109 W.Va. 111, 153 S.E. 146 (1930). In *Dorsey*, a tract of land bordered on a public road, but the landowner's access to the public road was "precipitous." The owner sought to use a path across an adjoining lot as "the natural and convenient outlet" to haul timber, and said building an access directly to the bordering public road would "entail expense disproportionate to the value of the timber." The record showed, however, that coal had been hauled—albeit with some difficulty—off the same land directly to the public road in the past. The Court concluded the landowner failed to establish a strict necessity for a road, and concluded that "convenience is not the basis of a right to an easement." 109 W.Va. at 112–113, 153 S.E. at 147.

to be implied by the use of the land prior to severance.

Dean Fisher and other scholars refer to this easement as "implied from quasi-easements."[16] Fisher, 112 *W.Va.L.Rev.* 637, 727. This scholarly term arises from the fact that an owner of a unified tract cannot have an easement for his or her own benefit across his or her own land. Dean Fisher reasons that when a landowner uses a part of the landowner's unified tract (called the "quasi-servient tenement") for the benefit of another part of the tract (called the "quasi-dominant tenement"), the landowner has implicitly created a quasi-easement for a particular use. When the unified tract is later severed, the owner of the now-dominant tenement may imply, from the prior particular use, that an easement for the same use exists across the now-servient tenement. Fisher, *supra.*

In West Virginia, we have broadly and loosely referred to such easements as "implied easements" or "easements by implication." We stated the general elements of an easement implied by prior use in syllabus point 2 of *Stuart, supra,* as follows:

> The general rule is that there is no implied reservation of an easement when an owner conveys a part of his land over which he has previously exercised a privilege for the benefit of the land which he retains unless the burden upon the land conveyed is apparent, continuous and necessary for the enjoyment of the land retained.

The opinion in *Stuart* elaborated on the elements of an easement by implication as follows:

> With reference to the elements essential to the creation of an easement by implication upon severance of the unity of owner-

ship in land, 17 Am.Jur., Easements, Section 34, contains this language: "Various elements are essential to create an easement by implication upon the severance of the unity of ownership in an estate. They are: (1) A separation of title; (2) necessity that, before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) necessity that the easement be essential to the beneficial enjoyment of the land ... retained. Another essential is sometimes added to these— namely that the servitude be continuous, as distinguished from temporary or occasional."

141 W.Va. at 639, 92 S.E.2d at 898–99. As stated in 6B M.J., *Easements* § 13 (Lexis Law Pub. 1998): "Where the servient estate is granted and the dominant reserved, the easement reserved by implication not only must be one that is apparent and continuous, and such as is indicated by the condition of the premises at the time of the sale, but also must be one strictly of necessity so that another cannot be substituted at a reasonable expense."

■■■ To establish an easement implied by a prior use of the land, a party must prove four elements: (1) prior common ownership of the dominant and servient estates; (2) severance (that is, a conveyance of the dominant and/or servient estates to another); (3) the use giving rise to the asserted easement was in existence at the time of the conveyance dividing the property, and the use has been so long continued and so obvious as to show that the parties to the conveyance intended and meant for the use to be permanent; and (4) the easement was necessary at the time of the severance for the proper and reasonable enjoyment of the dominant estate.[17] To the extent that *Stuart* is inconsis-

---

**16.** The reasoning behind this choice of nomenclature is that there are several easements that can be implied by circumstances which do *not* involve prior use, including "easements implicit in deed descriptions, references to a plat, and acts of dedication." Ely and Bruce, § 4.15.

**17.** "Courts recognize the grant or reservation of an easement implied from a quasi-easement when the claimant establishes the following elements:

1. Prior common ownership of the dominant and the servient estates
2. The common owner's apparent and continuous use of part of the land to benefit another part (quasi-easement)
3. Transfer of one of the parcels (severance)
4. Necessity at severance for the preexisting use to continue."

Ely and Bruce, *supra,* at § 4.16.

tent with these four elements, it is hereby modified.

■ Easements implied from prior use are based on the inferred intentions of the parties involved in the severance of the unified estate into the purported dominant and servient estates. The grantor and grantee are presumed to have intended—by viewing the grantor's obvious, continuous, preexisting use of the land in a particular way—to permanently include in the transaction any easement necessary for the continued proper and reasonable enjoyment of either the parcel transferred or the parcel retained.

As with easements implied by necessity, many courts grappling with easements implied by prior use (including the circuit court below) have struggled to apply the fourth element, centering upon whether an easement is "necessary" for the proper and reasonable enjoyment of the dominant tract. The term "necessary" has been used loosely in our prior cases concerning easements by implication, and varies between "necessary," "reasonable necessity," and "strictly necessary." For instance, syllabus point 1 of *Miller v. Skaggs*, 79 W.Va. 645, 91 S.E. 536 (1917) says:

> To raise an implied reservation or grant of an easement the existing servitude must at the time of the deed be apparent, continuous and *strictly necessary.* (emphasis added)

*See also,* syllabus point 2, *Hoffman v. Shoemaker,* 69 W.Va. 233, 71 S.E. 198 (1911) ("A grantor may claim a way over the granted premises, as reserved by implication, if it is shown to be strictly necessary to the use and enjoyment of adjacent land retained by him[.]"); However, syllabus point 4 of *Miller* states: "The rule of strict necessity applicable to an implied reservation or grant of an easement is not limited to one of absolute necessity, but to reasonable necessity, as distinguished from mere convenience."

■ We feel it is important to clear up the meaning of the term "necessary" in our definition of easements implied by prior use. The weight of authority and better view sustain the rule that the requisite degree of necessity is "reasonable necessity," that is, the easement is "necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made[.]" *Hillary Corp. v. U.S. Cold Storage, Inc.,* 250 Neb. 397, 550 N.W.2d 889, 897 (1996). *See also, Akers v. D.L. White Constr., Inc.,* 142 Idaho 293, 302, 127 P.3d 196, 205 (2005) ("[T]he party claiming an implied easement from prior use [must] show the easement to be 'reasonably necessary' for the proper enjoyment of the dominant estate. . . . [A] court does not look to the present moment, but instead determines whether reasonable necessity existed at the time the dominant and servient estates were severed."). To be clear, however,

> An easement by implication does not arise merely because its use is convenient to the beneficial enjoyment of the dominant portion of the property; the term 'necessary' means that there can be no other reasonable mode of enjoying the dominant tenement without the easement. . . . Some courts have adopted as the test of necessity the question of whether the use is one for which a substitute can be furnished by reasonable labor and expense.

*Griffeth v. Eid,* 573 N.W.2d 829, 832 (N.D. 1998). As we stated previously, "necessary" means "that another [access] cannot be substituted at a reasonable expense." 6B M.J., *Easements* § 13 (Lexis Law Pub. 1998).

■ Regardless of the degree of necessity required for an easement implied by a prior use, the duration of the necessity is one element that distinguishes this form of easement from easements implied by necessity. As we stated previously, an easement implied by necessity will continue to exist only so long as the underlying necessity exists. An easement implied by a prior use of the land, however, is permanent and must only be proven necessary at the time of severance. As one treatise states:

> Once the requisite degree of necessity at severance is established, the inquiry regarding necessity ends. Unlike the situation with easements of necessity, there is no requirement that continuing necessity be demonstrated with easements implied from quasi-easements. Such easements are permanent, whereas easements of ne-

cessity endure only as long as the underlying necessity lasts.

Ely and Bruce, *supra* at § 4.22.[18]

We therefore hold that when a party seeks to establish the existence of an easement implied by a prior use, the party must show the easement was not merely convenient to the enjoyment of the dominant estate, but (1) was important and reasonably necessary to the use of the dominant estate at the time the dominant and servient estates were severed; (2) that another access could not have been substituted at a reasonable expense; and (3) that without the easement there can be no other reasonable means of using the dominant estate.

The instant matter asks whether an easement, implied by prior use, exists for the Cobbs to drive vehicles on a way, or road, across the Daughertys' portion of Lot 4 to access the middle or rear portion of the Cobbs' property from the public road. The Cobbs presented no evidence, let alone clear and convincing evidence, showing that prior to the division of Lot 4 in 1983 there was an apparent and obvious preexisting use of any way or road over what became the Daughertys' half of Lot 4. Instead, the record shows that in the early 1980s, Lot 4 was largely overgrown with trees and underbrush. The record indicates that it was only several years later, *after* Lot 4 was divided, that the Cobbs began crossing the Daughertys' portion of Lot 4 to access their land, and even then the record indicates that the use of the drive was sporadic and not "continuous."[19] Finally, the Cobbs presented no evidence establishing, at the time Lot 4 was severed, that the use of a way or road across the Daughertys' half of Lot 4 was necessary to the enjoyment of the Cobbs' half of Lot 4, that another access could not be established at a reasonable expense and that, without the easement, there was no other reasonable way to enjoy the dominant estate.

Upon all of the above, the record fails as a matter of law to establish the elements of an easement implied by prior use over the Daughertys' half of Lot 4.

## V.

## Conclusion

The circuit court committed error in submitting the Cobbs' allegations of an easement implied by necessity and an easement implied by prior use to the jury, rather than granting the Daughertys' motion for judgment as a matter of law. Consequently, the December 22, 2008, order of the Circuit Court of Kanawha County is reversed, and judgment is entered in favor of the appel-

---

18. We are not unmindful that easements can be abandoned in certain circumstances. *See*, Fisher, *supra*, 112 *W.Va.L.Rev.* 637, *et seq.* However, abandonment was never an issue in this action.

19. The use of Lot 4 by the Cobbs and the Darrahs during the Darrahs' interim ownership is described in a letter dated August 14, 2005, from David Darrah to Ronald D. Cobb. The letter states in its entirety:

You asked me to document the use of the cut in the hill which starts at Circle Road and entered my half of the lot between our houses when I owned this property and 1031 Circle Road.

The cut was made in the early 1980s by the owner previous to either of us to haul dirt being excavated from the lot between our two houses. You later purchased the lot, then I bought half of it. Subsequently, I bought your half and sold it back to you at a later date. During this time the lot was largely unimproved from the excavation work.

When you were planning to build your pool, we also graded the property on both sides. We made a decision to leave the access in place as it was the only practical way to bring vehicles or equipment into either of our property. I don't recall that we ever had a formal agreement.

After the improvements were made, each of us occasionally used this access. As I recall, we normally requested permission to bring equipment across the other's property, but not always.

I never thought about the common use of this access in legal or property terms. I just thought of it as the kind of thing one neighbor did for another.

Although Mr. Darrah's August 14, 2005, letter is open to interpretation, the reference to occasional use with permission after the lot was severed is not consistent with the elements of an easement implied by prior use.

lants, Thomas S. and Christine A. Daugherty, as a matter of law.

Reversed.